IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>WISCONSIN ELECTIONS COMMISSION, AND MEAGAN WOLFE, in her Official Capacity as Administrator of the Wisconsin Elections Commission for the State of Wisconsin, Ann S. Jacobs, Mark L. Thomsen, Carrie Riepl, Don M. Millis, Robert F. Spindell, Jr., and Marge Bostelmann, each in their official capacity as Commissioner of the Wisconsin Elections Commission,<br><br>Defendants. | CASE NO: 3:25-cv-1036<br><br>MEMORANDUM IN SUPPORT OF THE REQUEST FOR ORDER TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |

**MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................4

BACKGROUND ...................................................................................................6

    A.    Title III of the Civil Rights Act of 1960 ...................................6

    B.    The Attorney General is demanding federal election records under the CRA to assess Wisconsin's and HAVA compliance. ………………………………………………………………………8

ARGUMENT……………………………………………………......................10

    A. The United States is entitled to an Order to Compel Production under the CRA……………………………………………………….10

    B. The CRA does not permit Defendants to withhold federal elections because of privacy concerns.…………..…………………………….13

    C. The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records …...…………………………………………………..…………….15

CONCLUSION…………………………………………….………………….17

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)............................13

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)..................5

*Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 638 (7th Cir. 2024) .............. 13, 15

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ....................................... 4, 8, 13

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025)..................................................................................................14

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) .....................................5

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ...................................................7

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ......................................................7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)............................................... passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005) .......................................................15

**Statutes**

52 U.S.C. § 20501 ......................................................................................................8

52 U.S.C. § 20507 ....................................................................................................15

52 U.S.C. § 20510 ....................................................................................................15

52 U.S.C. § 20701 ......................................................................................... 4, 6, 7, 11

52 U.S.C. § 20703 .............................................................................................. passim

52 U.S.C. § 20706 ....................................................................................................11

52 U.S.C. § 21083 .............................................................................................. 12, 14

Wis. Stat. § 6.36 .......................................................................................................11

**Constitutional Provisions**

U.S. Const. art. VI....................................................................................................14

## INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

On June 17, 2025, and December 2, 2025, the Attorney General, through her representatives, made a written demand to State Administrator Wolfe to produce certain federal election records covered by the CRA. The written demands explained that the purpose of the demand was to assess Wisconsin's compliance with the Help America Vote Act ("HAVA"). Administrator Wolfe refused to produce the requested federal election records. This litigation followed.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel production that requires Administrator Wolfe to produce the federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "available for inspection, reproduction, and copying…" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to compel Defendants to produce the federal election records described in its written demand.

## BACKGROUND

**A.     Title III of the Civil Rights Act of 1960.**

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election. 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the

7

sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General is demanding federal election records under the CRA to assess Wisconsin's HAVA compliance.

On June 17, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Administrator Wolfe, Chief Election Official of Wisconsin, regarding Wisconsin's compliance with federal list maintenance requirements. Ex. 1, Dep't Ltr. to Wolfe dated June 17, 2025 ("June 17 Letter"). This letter was a follow up to a June 4 letter alerting the Wisconsin Election Commission of some concerns the Department had regarding Wisconsin's HAVA compliance. Ex. 6, Dep't Ltr. To WEC dated June 4, 2025. HAVA has list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). HAVA imposes certain recordkeeping duties and requires

reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §21083(a)(1)(A).

The Letter requested a copy of Wisconsin's statewide voter registration list ("SVRL") within twenty days of the date of the letter.

In response, on July 2, 2025, Administrator Wolfe provided only the publicly available SVRL and partial responses to the Attorney General's written requests. ("July 2 Letter") Ex. 2. On December 2, 2025, the Attorney General sent an email to Administrator Wolfe stating:

> Please consider this email a demand to provide within 7 days:
> - An electronic copy of the full Wisconsin statewide voter registration list
>   - This list is to include, pursuant to the Help America Vote Act, either the last four digits of the social security number, the driver's license number, or both.
> 
> This request is for the purpose of ensuring compliance with minimum standards and routine voter registration list maintenance.

December 2 Email, Ex. 3.

The December 2 email attached a proposed Memorandum of Understanding (MOU) between the United States and Wisconsin to alleviate any privacy concerns. The MOU stated that the authorities by which this information was requested were the NVRA, HAVA, and the CRA, as well as the Privacy Act of 1974, 5 U.S.C. § 552a. The MOU further stated the purpose of the request was to test, analyze and assess states' SVRLs for proper list maintenance and compliance with federal law.

On December 11, 2025, Administrator Wolfe sent a letter refusing to provide Wisconsin's SVRL, stating: "having reviewed the December 2, 2025, proposed Memorandum of Understanding and related statutes, the Commission concludes that the cited federal authorities do not override Wisconsin's statutory restrictions on the release of elector PII." ("December 11 Letter"). Administrator Wolfe cited to Wis. Stat. § 6.36(1)(b)1.a. asserting that "[s]tate law requires that Wisconsin's official registration list be open for public inspection but prohibits the Commission from disclosing certain personally identifiable information ('PII')." Ex. 4, December 11 Letter.

## ARGUMENT

**A.    The United States is entitled to an Order to Compel Production under the CRA.**

An order to compel production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's June 17 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a federal election; (2) directing that demand to Officer Wolfe, an officer of election as defined by Section 306 of the CRA;[2] and (3) stating that the purpose of the demand is "to assist in our determination of whether Wisconsin's list maintenance program complies with the HAVA." Ex. 1, June 17 Letter.

Administrator Wolfe relies on state law, stating: "[s]tate law requires that Wisconsin's official registration list be open for public inspection but prohibits the Commission from disclosing certain personally identifiable information ("PII"). Wis. Stat. § 6.36(1)(b)1.a." *See* December 11 Letter at 1 (quoting Wis. Stat. § 6.36(1)(b)1.a. Administrator Wolfe's reliance on state laws to deny the Attorney

---

[2] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

11

General's demand for a copy of the Wisconsin's SVRL is without merit and insufficient. Officers of election have no discretion to refuse or otherwise limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

The Attorney General cannot assess compliance with HAVA without the full, unredacted SVRL and other requested federal election records pertaining to Wisconsin's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083(a)(5)(A)(i)-(ii). Without the data including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states (including Wisconsin) share the identical information sought by

the Attorney General here with a private organization known as the Electronic Registration Information Center ("ERIC").

The same unredacted federal election records, including the SVRL, are needed to assess Wisconsin's compliance with the HAVA. The use of unredacted voter data ensures that matches to identify deceased and duplicate voters are more accurate and complete. This is the same information Wisconsin provides to ERIC.

Administrator Wolfe has rejected the United States's written demand pursuant to the CRA to produce Wisconsin's statewide VRL, a federal election record. Consequently, the United States respectfully requests that this Court issue an Order compelling Administrator Wolfe to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

> **B.    The CRA does not permit Defendants to withhold federal elections because of privacy concerns.**

Defendants have refused to produce the federal election records demanded by the Attorney General under the CRA because he contends that Wisconsin's election law and the Federal Privacy Act prohibit cooperation without an appropriate purpose stated by the Attorney General. First, the June 17 Letter and December 2 Email provided Administrator Wolfe with the Attorney General's purpose for the demand. Second, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our federal system that when federal and state law conflict, the federal law

governs. *See* U.S. Const. art. VI. As this Circuit has explained, The Elections Clause, U.S. Const. art. I, § 4, cl. 1, is a "default provision," meaning it "invests the States with the responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices." *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 638 (7th Cir. 2024);[3] *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Eric Neff as Ex. 5, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52

---

[3] US Supreme Court certiorari granted by *Bost v. Ill. State Bd. of Elections*, 2025 U.S. LEXIS 2183 (U.S., June 2, 2025).

14

U.S.C. § 20701." *Id.* at 10-11. The court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id*. § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Bost*, 114 F.4th 634, 638. Consequently, the Attorney General is entitled to the federal election records she has demanded from Officer Wolfe under the CRA, notwithstanding any conflicting state privacy laws.

### C.　The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Officer Wolfe, as an officer of election for Wisconsin, must produce the voter-registration lists and other federal election

15

records demanded by the Attorney General.[4] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Administrator Wolfe, acting as an officer of election for Wisconsin, "failed or refused to make such papers 'available for inspection,

---

[4] Although this Motion for an Order to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of federal election records. *See* 52 U.S.C. § 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

16

reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Administrator Wolfe to produce the Federal election records described in the Attorney General's written demand.

## CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendants to comply with the Attorney General's Demand pursuant to the CRA for an electronic copy of Wisconsin's SVRL including the name, date of birth, Driver's license number, last four digits of the social security number or the HAVA unique identifier.  Those records should be provided electronically to the United States within five days.

Dated: December 18, 2025　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　HARMEET K. DHILLON
　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　Civil Rights Division


　　　　　　　　　　　　　　　　　 /s/ *Brittany E. Bennett*
　　　　　　　　　　　　　　　　　BRITTANY E. BENNETT
　　　　　　　　　　　　　　　　　Trial Attorney, Voting Section
　　　　　　　　　　　　　　　　　Civil Rights Division
　　　　　　　　　　　　　　　　　4 Constitution Square
　　　　　　　　　　　　　　　　　150 M Street, Room 8.141
　　　　　　　　　　　　　　　　　Washington, D.C. 20002
　　　　　　　　　　　　　　　　　brittany.bennett@usdoj.gov
　　　　　　　　　　　　　　　　　Tel. (202) 704-5430
　　　　　　　　　　　　　　　　　Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov
