# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          *Plaintiff,*<br>   v.<br><br>WISCONSIN ELECTIONS<br>COMMISSION, et al.,<br><br>  *Defendants.* | 25-cv-1036-amb |

**[PROPOSED] MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OF COMMON CAUSE, MELISSA ADAMS,
AMANDA MAKULEC, AND JAIME RIEFER**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 1

LEGAL STANDARD ..................................................................................... 6

ARGUMENT .................................................................................................. 7

   I.   The United States' Demand Exceeds the Statutory Authority of the CRA and Is Contrary to Law. .................................................................... 7

    A.  The United States' Demand Fails To Meet the CRA's Requirements. ........... 8

    B.  Any Records Disclosed Under the CRA Should Be Redacted To Protect the Constitutional Rights of the Voter, So the Requested Relief Must Fail. ....................................................................................... 11

   II.  If This Court Considers and Rules on the United States' Motion to Compel, It Should Deny That Motion. ........................................... 14

CONCLUSION ............................................................................................. 18

CERTIFICATE OF SERVICE ..................................................................... 20

## INTRODUCTION

The United States seeks through this action to compel disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States' complaint fails to adequately disclose the basis and the purpose of its demand for the data, dismissal should be granted, and its attempt to summarily dispose of this case via an improper motion to compel should be rejected.

Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice has explained, Title III of the Civil Rights Act of 1960 ("Title III" or "CRA"), the provision invoked here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., C.R. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960); H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for Wisconsin's unredacted voter file—which contains sensitive personal information including driver's license numbers and/or partial Social Security numbers from millions of Wisconsinites—undermines the CRA's core purposes and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here, where the United States has not fully and accurately set forth "the basis and the purpose" for its data request, as required by the very statute that it invokes. 52 U.S.C. § 20703. The Court should dismiss the complaint before it takes any briefing on the United States' motion to compel and without ruling on that motion.

## BACKGROUND

Beginning in May 2025, Plaintiff United States of America, through its Department of Justice ("USDOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration

databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On June 17, 2025, USDOJ sent a letter to the Wisconsin Elections Commission ("WEC") Administrator, Meagan Wolfe (the "Administrator"), requesting information about WEC's administration of elections and compliance with the federal Help America Vote Act ("HAVA"). Dkt. 1, Compl. ¶¶ 19–20; *see also* Dkt. 3-1 at 1, Ex. 1 to U.S. Mot. to Compel, Letter of Acting Chief Maureen Riordan to Administrator Meagan Wolfe dated June 17, 2025, ("June 17 USDOJ Letter"). Among other things, USDOJ requested that the Administrator provide a copy of Wisconsin's "current voter registration list" that includes "both active and inactive voters." Dkt. 1, Compl. ¶¶ 19–20; *see also* Dkt. 3-1 at 3, June 17 USDOJ Ltr. It also propounded several questions regarding Wisconsin's voter registration and list maintenance procedures, including requests for information about WEC's identification and removal from the rolls of purported "registrants who are ineligible due to non-citizenship" and voters "who have moved outside the state." Dkt. 3-1 at 3, June 17 USDOJ Ltr. USDOJ asked the Administrator to respond within 20 days. *Id.*

On July 2, 2025, WEC responded to USDOJ's questions about Wisconsin election administration and HAVA compliance. Dkt. 1, Compl. ¶ 22; Dkt. 3-1 at 4, Ex. 2 to U.S. Mot. to Compel, Letter of Wis. Elections Comm'n to Acting Chief Maureen Riordan dated July 2, 2025 ("July 2 WEC Letter"). As to USDOJ's request for Wisconsin's voter registration list, WEC "offered the publicly available" list, Dkt. 1, Compl. ¶ 22, and noted that "Wisconsin law requires the Commission to charge a fee for access to voter registration data," without any "exceptions for elected officials, government agencies, journalists, non-profits, academics, or any other group," Dkt. 3-1 at 9, July 2 WEC Ltr.

Months later, on December 2, 2025, USDOJ sent an email to WEC. Dkt. 1, Compl. ¶ 23. This time, it directed WEC to "[p]lease consider this email a demand to provide . . . [a]n electronic copy of the full Wisconsin statewide voter registration list." Dkt. 3-1 at 11, Ex. 3 to U.S. Mot. to Compel, Email of Attorney Eric Neff to WEC dated December 2, 2025 ("December 2 USDOJ Demand"). The body of that email read, in full, as follows:

> Please consider this email a demand to provide within 7 days:
> - An electronic copy of the full Wisconsin statewide voter registration list
>   o This list is to include, pursuant to the Help America Vote Act, either the last four digits of the social security number, the driver's license number, or both.
> This request is for the purpose of ensuring compliance with minimum standards and routine voter registration list maintenance.

*Id.* USDOJ also attached a proposed memorandum of understanding to its email. Dkt. 1, Compl. ¶ 24; *see also* Ex. 1 to Common Cause Mot. to Intervene, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU"),[1] discussed further *infra* at 11, 16. That MOU indicated that the "purpose" of USDOJ's request for data was to "test, analyze and assess states' [voter registration lists] for proper list maintenance and compliance with federal law." Dkt. 1, Compl. ¶ 24; *see also* Ex. 1 to Common Cause Mot. to Intervene, MOU at 2.

On December 11, 2025, WEC Chair Ann S. Jacobs and Commissioners Marge

---

[1] While the United States has not filed the MOU as an exhibit in this case, the MOU has become publicly available. *See* Jonathan Shorman, *Trump's DOJ offers states confidential deal to remove voters flagged by feds*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. In addition to incorporating the memorandum of understanding that USDOJ sent to WEC by reference in its Complaint, Dkt. 1, Compl. ¶ 24, the United States has represented in court that it intended for a number of States to sign MOUs as to its requests for state voter files. Ex. 2 to Common Cause Mot. to Intervene, Hr'g Tr. at 72–73, 90, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025) (DOJ attorney discussing MOU). This Court can take judicial notice of the MOU as a government document produced by USDOJ. *See, e.g.*, *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (collecting cases where courts took judicial notice of public records and government records).

Bostelman, Don M. Millis, Carrie Riepl, and Mark L. Thomsen responded to the December 2 USDOJ Demand. Dkt. 1, Compl. ¶ 25; Dkt. 3-1 at 12, Ex. 4 to U.S. Mot. to Compel, Letter of WEC Chair Ann S. Jacobs et al. to Attorney Neff dated December 11, 2025 ("December 11 WEC Letter"). The commissioners explained that WEC is "willing to provide any non-confidential voter registration data or records" to USDOJ, but that "Wisconsin law explicitly prohibits the Commission from providing the full unredacted voter registration list." Dkt. 3-1 at 13, Dec. 11 WEC Ltr. The commissioners set out controlling Wisconsin law's limitations on disclosure of certain personally identifiable information—including an elector's driver's license number and social security number—and explained why nothing in federal law contradicts or overrides the governing state law. *Id.* at 13–15. And they described the "broader framework of list maintenance practices in Wisconsin," including a description of each of Wisconsin's eleven major voter list maintenance processes. *Id.* at 15–17. The commissioners noted that they had "reviewed" USDOJ's proposed memorandum of understanding, but they did not enter into it on WEC's behalf. *See id.* at 14.

The United States responded by filing this lawsuit, which is one of at least twenty-four similar suits seeking disclosure of sensitive voter data.[2] The United States concurrently filed a motion to compel the production of records—namely, "an electronic copy of the Wisconsin statewide Voter Registration List with all fields,

---

[2] *See* Press Release, *U.S. Dep't of Just., Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

including each registrant's name, date of birth, address, and as required by HAVA, the last four digits of the registrant's social security number, driver's license/state identification number or the unique HAVA identifier." Dkt. 2 at 3–4, Mot. to Compel.

DOJ's request for private, sensitive voter data appears to be in connection with never-before-seen efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize voter rolls. According to reporting, USDOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. USDOJ is coordinating these efforts with the U.S. Department of Homeland Security ("DHS"), according to reported statements from USDOJ and DHS. *Id.*[3] A recent article extensively quoted a lawyer who recently left USDOJ's Civil Rights Division, describing the government's aims in these lawsuits:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

---

[3] *See also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Common Cause Mot. to Intervene at 6–7 & nn.4–5. And USDOJ's actions also indicate that it may target specific groups of voters in its use of the requested data: In its initial June 17 Letter to the Administrator, or in letters to other states requesting private voter data, USDOJ has requested information about how election officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship. *See, e.g.*, Dkt. 3-1 at 2–3, June 17 USDOJ Ltr.; Ex. 3 to Common Cause Mot. to Intervene, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1. The federal government has also confirmed that USDOJ has been sharing the requested information with DHS.[4]

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court need not accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," survive a motion to dismiss. *Id.* at 678–79; *see also, e.g.*, *One Wisconsin Inst., Inc. v. Nichol*, 155 F. Supp. 3d 898, 901 (W.D. Wis. 2015) ("the court is not bound to accept legal conclusions or threadbare allegations that merely recite the elements of a claim"); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018) ("bald assertion" that defendant

---

[4] Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

had "been unjustly enriched" failed to state an unjust enrichment claim). In assessing a motion for failure to state a claim, courts may take judicial notice of matters of public record, orders, items appearing in the record, and exhibits attached to the complaint. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir.1997).

## ARGUMENT

Because USDOJ has not provided a statutorily sufficient basis and purpose to support its request for Wisconsin's unredacted voter file, its complaint should be dismissed. Moreover, the Court should dismiss the complaint before it takes any briefing on the United States' outstanding motion to compel and without ruling on that motion—but if it reaches that motion, it should deny.

## I. The United States' Demand Exceeds the Statutory Authority of the CRA and Is Contrary to Law.

The United States' demand for Wisconsin's full, unredacted voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Wisconsin's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in support of its records requests. *Second*,

any records should be redacted to vindicate the privacy and constitutional rights of Wisconsin voters. Nothing in the CRA prevents the appropriate redaction of the sensitive personal information of voters. As a result, the United States is not entitled to its requested relief.

### A. The United States' Demand Fails To Meet the CRA's Requirements.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id.* § 20703. Section 303 also specifies that the requisite written "demand shall contain a statement of *the basis and the purpose therefor*." *Id.* (emphasis added).

The federal government's requests fail to provide, and its complaint fails to allege, "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id.* The complaint offers only the conclusory allegation: "The written demand"—*i.e.*, the December 2 USDOJ Demand, Dkt. 1, Compl. ¶ 26,— "'contain[ed] a statement of the basis and the purpose therefor.'" *Id.* ¶ 27 (citation omitted). The December 2 USDOJ Demand does not mention the CRA at all. *See* Dkt. 3-1 at 11, December 2 USDOJ Demand. It includes only the bare assertion that the "purpose" of the demand is "ensuring compliance with minimum standards and

routine voter registration list maintenance." *Id.* Neither the complaint, the written demand, nor any of USDOJ's correspondence with Wisconsin officials alleges adequate evidence of anomalies or anything amiss with Wisconsin's list maintenance.

Contemporaneous case law immediately following Title III's enactment shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III have consistently been treated as distinct concepts. *See id.*; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

Even if the United States had provided a proper "purpose" for its demand—and it did not—it fails to explain any connection between that purported "purpose" and the request for the full and unredacted voter file. That is, its written demand does not explain *why* the federal government's review of unredacted voter files is necessary to determine whether Wisconsin is complying with minimum standards and routine voter registration list maintenance, Dkt. 1, Compl. ¶ 23, particularly given that HAVA leaves the mechanisms for conducting list maintenance within the State's discretion. *See* 52 U.S.C. §§ 21083(a)(2)(A), 21085.

The basis and purpose requirements are critical safeguards that prevent the statute from being used as a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. For example, in the context of administrative subpoenas, and specifically in assessing an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether

the investigation is "conducted pursuant to a legitimate purpose," *United States v. Powell*, 379 U.S. 48, 57 (1964), and that such subpoenas "may not be so broad so as to be in the nature of a 'fishing expedition,'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). Such purpose requirements ensure that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation via administrative subpoena).

As such, even if some other voting records or some portion of the voter file were necessary to investigate Wisconsin's "compliance with minimum standards and routine voter registration list maintenance," Dkt. 3-1 at 11, Dec. 2 USDOJ Demand, the United States has not provided any justification for why the full unredacted voter file is necessary. For decades, USDOJ has neither sought nor required a full, unredacted voter file in its compliance investigations. The United States' failure to articulate the basis and the purpose for its demand is another reason it is insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that the federal government did not disclose the main basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies for unlawful purposes. *See supra* at 5–6. As Congress has never authorized the creation of such a database, its creation would violate the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

The federal government's failure to fully and accurately provide this information is fatal. Section 303 requires a statement of "the basis and the purpose" of a records request, and by twice using the definite article, the statute requires not

just *a* basis or purpose among many, but *the actual* basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). This is yet another ground for dismissal.

Setting aside this fatal deficiency, compliance with routine list maintenance requirements cannot be the true basis and purpose for these data requests based on the United States' own more recent statements to States in connection with the requests. The United States has requested that a number of States, including Wisconsin, enter into a MOU in connection with its requests for statewide voter files. *See* Ex. 1 to Common Cause Mot. to Intervene, MOU. Far from indicating a purpose of ensuring compliance with HAVA, the United States' proposed MOU *runs afoul* of HAVA. HAVA requires a state to conduct a "reasonable effort" to remove ineligible voters from the rolls. 52 U.S.C. § 21083(a)(4)(A). But the MOU that the government proposed indicates contemplated violations of HAVA's requirements, including by seeking to place authority to identify supposed ineligible voters in the hands of the federal government, contrary to statutory text. *Id.* § 21085 (methods of complying with HAVA "left to the discretion of the State"). Ex. 1 to Common Cause Mot. to Intervene, MOU at 2, 5. This MOU shows that the United States' supposed purpose is not in compliance with federal law but aggrandizes authority to a federal agency in ways contrary to federal law.

### B.  Any Records Disclosed Under the CRA Should Be Redacted To Protect the Constitutional Rights of the Voter, So the Requested Relief Must Fail.

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction, which is not barred under Title III. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional

right to vote. The cases interpreting Section 8(i) of the National Voter Registration Act ("NVRA") are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See United States v. Orona-Ibarra*, 831 F.3d 867, 876 (7th Cir. 2016) (applying "[t]he well-established canon of constitutional avoidance," which instructs that "'[w]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter'" (quoting *Jones v. United States*, 529 U.S. 848, 857 (2000))).

Federal courts have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Indeed, another court within the Seventh Circuit has previously recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942

(C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-cv-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022).[5] And Wisconsin law provides express protections from disclosure for social security numbers, driver's license numbers, and contact information of participants in the confidential address programs. *See* Wis. Stat. §§ 6.36(1)(b)1.a, 165.68.

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *See, e.g., Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." *Id.* The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Wisconsin voters and civic groups is present here. *See* Decl. of Bianca N. Shaw ¶¶ 10–14; Decl. of Melissa Adams ¶¶ 7–8; Decl. of Amanda Makulec ¶¶ 7–13;

---

[5] Other courts have consistently reached the same conclusion. *See, e.g., N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023).

Decl. of Jaime Riefer ¶¶ 6–9.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledge that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.[6] Accordingly, even if the United States had satisfied the statutory requirements to require disclosure of Wisconsin's voter list (and it did not), sensitive personal voter information would still be subject to redaction.

## II.    If This Court Considers and Rules on the United States' Motion to Compel, It Should Deny That Motion.

The Court should dismiss the complaint before it takes any briefing on the United States' motion to compel and without ruling on that motion. Alternatively, to the extent that this Court considers the United States' motion to compel, it should deny that motion. The court presiding over the federal government's similar action in California has already recognized that the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Ex. 2 to Common Cause Mot. to Intervene, Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel,

---

[6] The United States cites *Crook v. S.C. Election Comm'.*, No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025), a non-binding decision which briefly discussed Title III in dicta. Dkt. 3, Mem. in Supp. of U.S. Mot. to Compel ("Mot. to Compel Br.") at 16–17. *Crook* did not address Proposed Intervenors' arguments about the basis-and-purpose requirement or the need to redact sensitive voter information, so it carries little persuasive weight.

*id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Ex. 4 to Common Cause Mot. to Intervene, Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114. This Court should similarly set briefing deadlines that follow its consideration of any motions to dismiss—or if it chooses to consider the motion to compel, should deny it.

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the claim under Title III here. *See* Fed. R. Civ. P. 81. Ignoring these standards, the United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil Procedure by creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General'" that "a written demand for Federal election records and papers covered by the statute [was made], explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Dkt. 3, Mem. in Supp. of U.S. Mot. to Compel ("Mot. to Compel Br.") at 5 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–226 (5th Cir. 1962)); *see also* Dkt. 1, Compl. ¶¶ 1–4. This is contrary to the Federal Rules, not contemplated by statute, and rests on misreading a single set of non-binding cases decided sixty plus years ago, in a different circuit and a drastically different context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* Dkt. 3, Mot. to Compel Br. at 4–8, 15–17; *see also* Dkt. 1, Compl. ¶¶ 1–4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue."

15

Dkt. 5, Mot. to Compel Br. at 5 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[7] In these states, election officials and others, including judges, notoriously used every possible means to block Black Americans from registering to vote.[8] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[9]

By contrast, here, more than sixty years later, the context of *this* request could not be more different. The United States has invoked the CRA for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making unprecedented demands for sensitive personal information—amid both the United States' own MOU and extensive reporting suggesting that the basis and purpose are either unstated or pretextual, and that the data at issue is in fact being sought for unlawful ends.[10]

---

[7] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Jan. 7, 2026).

[8] *See generally, e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

[9] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging that while "[t]he right of free examination of official records is the rule" under Title III there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[10] *See, e.g.*, Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel

Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation and quotation marks omitted); *see also Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena). Just two years after *Lynd*, the Court held that proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604 (a) ("[T]he United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data[.]"), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.").

Even in *Lynd*, the court, in explaining its findings, noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The court also noted that the CRA authorizes jurisdiction by "appropriate

Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

process" to compel production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[11] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230.

The unredacted voter file USDOJ seeks in this action contains "confidential, private" personal identifying information of Wisconsin voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required stated basis and purpose, would go even further than *Lynd* did—in a context where, very much unlike there, the basis and purpose are not inarguably clear but appear pretextual or unspecified. To the extent that this Court considers the United States' motion to compel, it should deny the requested relief.

## CONCLUSION

For all these reasons, the United States' Motion to Compel should be denied and the Complaint dismissed.

---

[11] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

Dated: January 8, 2026

Megan C. Keenan*
American Civil Liberties Union
Foundation
915 15th St. NW
Washington, DC 20001
(740) 632-0671
mkeenan@aclu.org

Sophia Lin Lakin*
American Civil Liberties Union
Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

Respectfully submitted,

*/s/ Douglas M. Poland*
Douglas M. Poland, SBN 1055189
Scott B. Thompson, SBN 1098161
Law Forward, Inc.
222 W. Washington Ave., Ste. 680
Madison, WI 53703
dpoland@lawforward.org
sthompson@lawforward.org
608.283.9822

Ryan V. Cox, SBN 1140899
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
Fax: 414-272-0182
rcox@aclu-wi.org

*Application for admission forthcoming*

*Attorneys for Proposed Intervenors*
*Common Cause, Melissa Adams, Amanda*
*Makulec, and Jaime Riefer*

19

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record who have consented to electronic service. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ Douglas M. Poland*