# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 3:25-cv-01036-JDP |
| WISCONSIN ELECTIONS COMMISSION, *et al.*, | |
| Defendants, | |
| WISCONSIN ALLIANCE FOR RETIRED AMERICANS, FORWARD LATINO, | |
| Intervenor-Defendants, | |
| COMMON CAUSE, *et al.*, | |
| Intervenor-Defendants. | |

**FIRST SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANTS
WISCONSIN ALLIANCE FOR RETIRED AMERICANS AND FORWARD LATINO
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.      The Court should grant Defendants' Motion to Dismiss. ................................... 3

      A.      DOJ did not state an adequate, truthful basis and purpose for its demand
             as Title III requires. ............................................................................ 3

            1.      DOJ did not provide any statement of basis with its demand. ................... 4

            2.      DOJ's purported purpose is legally inadequate. ......................................... 5

            3.      DOJ's stated purpose is contrived and mere pretext to its true aims. ......... 7

      B.      HAVA's design and Wisconsin's exemption from traditional list
             maintenance procedures render DOJ's demand improper as a matter of
             law. ....................................................................................................... 8

      C.      DOJ's failure to comply with the Privacy Act is an independent ground
             for dismissal. ...................................................................................... 11

      D.      The Court should dismiss the Complaint without leave to amend. ....................... 15

II.     The Court should deny Plaintiff's Motion to Compel. .................................... 15

      A.      As parallel courts have found, the Federal Rules of Civil Procedure govern
             DOJ's claim. ...................................................................................... 16

      B.      The Court must conduct meaningful review of DOJ's Title III demand. ............. 16

      C.      The proper procedural course is to resolve the Motion to Dismiss and then,
             if needed, to proceed to discovery. ...................................................... 18

CONCLUSION.......................................................................................................... 19

CERTIFICATE OF SERVICE .................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 5

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) .......................................................................................................... 6

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) .......................................................................................... 5

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ............................................................................................ 4

*Farmer v. Brennan*,
    81 F.3d 1444 (7th Cir. 1996) .......................................................................................... 19

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ........................................................................................................ 19

*Gahagan v. USCIS*,
    911 F.3d 298 (5th Cir. 2018) .......................................................................................... 16

*Gonzalez-Koeneke v. West*,
    791 F.3d 801 (7th Cir. 2015) .......................................................................................... 15

*Home Depot U.S.A., Inc. v. Jackson*,
    587 U.S. 435 (2019) .......................................................................................................... 6

*Ill. State Emps. Union, Council 34 v. Lewis*,
    473 F.2d 561 (7th Cir. 1972) .......................................................................................... 19

*In re Admin. Subpoena, No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) .............................................................................. 7

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) ................................................................................. 3

*In re Subpoena, No. 25-1431-014*,
    No. 2:25-mc-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ........................ 6

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962) ....................................................................................... 3, 6

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ................................................................ 3, 17–18

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.,*
    725 F.3d 718 (7th Cir. 2013) ....................................................................... 4

*League of Women Voters v. U.S. Dep't of Homeland Sec.,*
    No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............................ 11–13, 15

*O'Brien v. Mass. Bay Transp. Auth.,*
    162 F.3d 40 (1st Cir. 1998) ........................................................................ 9

*Parungao v. Cmty. Health Sys., Inc.,*
    858 F.3d 452 (7th Cir. 2017) ..................................................................... 11

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ................................................................................... 9

*State of Ala. ex rel. Gallion v. Rogers,*
    187 F. Supp. 848 (M.D. Ala. 1960) ............................................................. 17

*United States v. Lynd,*
    301 F.2d 818 (5th Cir. 1962) ..................................................................... 17

*United States v. Oregon,*
    No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ...................... passim

*United States v. Powell,*
    379 U.S. 48 (1964) .................................................................................. 16

*United States v. Weber,*
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......... passim

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) .................................................................................. 5


**Federal Statutes**

5 U.S.C. § 552a ......................................................................................... 11–12

52 U.S.C. § 20703 ..................................................................................... 3–5, 17

52 U.S.C. § 21083 ......................................................................................... 9

52 U.S.C. § 21085 ........................................................................................ 11

iv

**State Statutes**

Wis. Stat. § 6.36 ................................................................................................................. 10

Wis. Stat. § 6.50 ................................................................................................................... 9

Wis. Stat. § 7.15 ................................................................................................................. 10

**Federal Rules**

Fed. R. Civ. P. 81 ............................................................................................................... 16

**Other Authorities**

68 Fed. Reg. 47610, 47611 (Aug. 11, 2003) ................................................................... 14

70 Fed. Reg. 43904, 43904 (July 29, 2005) .................................................................... 14

82 Fed. Reg. 24147 (May 25, 2017) ................................................................................ 14

## INTRODUCTION

Consistent with this Court's Order, Intervenors the Wisconsin Alliance for Retired Americans and Forward Latino (together, the "Alliance Intervenors"), hereby submit this supplemental brief in support of Defendants' Motion to Dismiss and in opposition to Plaintiff's Motion to Compel. WEC's brief persuasively lays out the case for dismissal of the Complaint and the reasons to deny the Motion to Compel; the Alliance Intervenors supplement that briefing only to the extent they have additional arguments to offer.[1]

In particular, the Alliance Intervenors use this supplemental brief to show the Court how WEC's arguments are supported by the federal district courts hearing DOJ's parallel claims against other states, including in opinions issued after WEC submitted its brief to this Court. To date, every court that has considered the matter has dismissed DOJ's claims. *See*, *e.g.*, *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *8–12 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *7–12 (D. Or. Feb. 5, 2026). The California and Oregon courts both held that DOJ's proffered "basis and purpose" do not suffice under Title III of the Civil Rights Act ("CRA"), *Weber*, 2026 WL 118807, at *8–12; *Oregon*, 2026 WL 318402, at *7–10, while observing that federal laws do not preempt state privacy laws protecting sensitive voter data, *Weber*, 2026 WL 118807, at *13–14, 17; *Oregon*, 2026 WL 318402, at *11–12. Moreover, the California court also held that the DOJ's data request violates the Privacy Act. *Weber*, 2026 WL 118807, at *17–18. This Court should dismiss DOJ's Complaint with prejudice, just as those courts have done. *See Weber*, 2026 WL 118807, at *20;

---

[1] Alliance Intervenors submitted a Proposed Answer with their Motion to Intervene, *see* Dkt. No. 7-4, and reserved the right to file a Rule 12(b) motion to dismiss, *see* Dkt. No. 7. However, consistent with this Court's scheduling order, Dkt. No. 53, they instead submit this supplemental brief in support of WEC's motion to dismiss, rather than submit their own Rule 12(b) motion.

*Oregon*, 2026 WL 318402, at *12. Similarly, those cases show how, despite DOJ's arguments otherwise, DOJ's Motion to Compel is procedurally and substantively improper. *See Weber*, 2026 WL 118807, at *8 & n.15; *Oregon*, 2026 WL 318402, at *8. This Court should reach the same result for the same reasons.

## ARGUMENT

As WEC correctly argues, DOJ's demand for information does not state a valid basis and purpose under Title III of the CRA (indeed, it *could not* state a valid purpose under Title III under these circumstances as a matter of law). *See* Br. Supp. Defs.' Mot. Dismiss & Opp'n Pl.'s Mot. Compel, at 15–32, Dkt. No. 58 ("WEC Br."). The Alliance Intervenors address those arguments only to the extent they have additional case law or context to offer. As WEC previews, and the Alliance Intervenors address in substance, DOJ's failure to comply with the Privacy Act also precludes the relief DOJ seeks—providing a basis not only for denying the Motion to Compel, but also for granting the Motion to Dismiss. The Alliance Intervenors additionally show why dismissal with prejudice is the appropriate course here, as parallel federal courts have done in dismissing DOJ's claims. *See Weber*, 2026 WL 118807, at *20; *Oregon*, 2026 WL 318402, at *12.

The Alliance Intervenors also agree with WEC that Plaintiff's Motion to Compel is procedurally and substantively improper. *See* WEC Br. at 42–47. To avoid duplication of argument, the Alliance Intervenors further address only how WEC's arguments are supported by the conclusions of the California and Oregon courts hearing DOJ's parallel claims seeking private voter data from those states and why *Kennedy v. Lynd* does not provide an adequate basis for this Court to avoid scrutiny of DOJ's demand. The Alliance Intervenors conclude by providing the Court a roadmap for the proper procedural resolution of this case.

I.    **The Court should grant Defendants' Motion to Dismiss.**

A.    **DOJ did not state an adequate, truthful basis and purpose for its demand as Title III requires.**

Intervenors agree with WEC that DOJ's demand under Title III lacks a lawful basis and purpose. *See* WEC Br. at 28–29. Without duplicating WEC's historical and textual arguments about the proper scope of Title III, *see id.* at 22–27, 29–31, the Alliance Intervenors offer the following additional analysis of the purpose and basis that is required to state a valid demand for information under Title III and why DOJ's demand falls short.

As WEC argues, and the Alliance Intervenors agree, a demand for records under Title III must state both "the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). DOJ has previously understood this dual requirement, and, in *Lynd*, provided an explicit statement of *both* the "basis" *and* "purpose" of its demand:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (internal quotation marks omitted) (emphases added). Other Title III cases from that period likewise discuss—consistent with Title III's express requirements—an explicit statement of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

"The requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9. But here, DOJ's demand fails to adequately allege *either* a basis or a lawful purpose, and thus its claim must be dismissed.

3

### 1.    DOJ did not provide any statement of basis with its demand.

DOJ's demand entirely failed to articulate "any basis" for the request. Not only does the Complaint fail to assert that Wisconsin has infringed on the constitutional right to vote, but it also fails to assert *any* factual basis for investigating Wisconsin's list maintenance practices for compliance with HAVA. *See generally* Compl., Dkt. No. 1. Nor did DOJ include the requisite basis with its demand: DOJ's December 2 email demanding Wisconsin's full statewide voter registration list did not articulate documented issues with Wisconsin's list maintenance efforts. *See* Dkt. No. 3-1 at 11. Instead, the demand stated only: "This request is for the purpose of ensuring compliance with minimum standards and routine voter registration list maintenance." *See id.*

The lack of a stated basis is fatal—Congress expressly required DOJ to state "the basis *and* the purpose" of its request, 52 U.S.C. § 20703 (emphasis added), and the Court must give meaning to both requirements. *See Weber*, 2026 WL 118807, at *8–9 (holding a proper demand under Title III requires DOJ to put forward "specific, articulable facts pointing to the violation of federal law"); *Oregon*, 2026 WL 318402, at *8–9 (similar); *see also KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 729 (7th Cir. 2013) ("Interpretations that render words of a statute superfluous are disfavored as a general matter."). "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitute[d] an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018) (quashing civil investigative demand that failed to provide basis for investigation). Thus, even if Title III could be used to investigate matters unrelated to denial of the right to vote, *but see infra* Section I.A.2, it requires that both the purpose *and the basis* of DOJ's request shall be contained in the demand itself, not as a post-hoc rationale advanced in litigation.

*See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)).[2]

As in California and Oregon, DOJ's failure to include a "basis" in its demand to Wisconsin therefore independently warrants dismissal. *See Weber*, 2026 WL 118807, at *9 (dismissing DOJ's Complaint and finding that DOJ failed to "establish[] the basis for its request" because DOJ failed to explain why it believed California had violated the NVRA or why voter data was necessary for its investigation); *Oregon*, 2026 WL 318402, at *8–9 (dismissing DOJ's Complaint and finding that DOJ's demand "contain[ed] no statement of a factual basis for believing Oregon violated the NVRA or HAVA").

### 2.    DOJ's purported purpose is legally inadequate.

DOJ's stated purpose for issuing the demand to Wisconsin—"ensuring compliance with minimum standards and routine voter registration list maintenance," Dkt. No. 3-1 at 11; *see also* Compl. ¶¶ 10, 23—is not legally sufficient under Title III. *See* WEC Br. at 28; *see also CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies "are . . . not afforded unfettered authority to cast about for potential wrongdoing" (citation modified)).

In interpreting the "purpose" requirement, courts should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S.

---

[2] Although DOJ asserts in its cause-of-action section that "[t]he written demand 'contain[ed] a statement of the basis and the purpose therefor,'" Compl. ¶ 27 (second alteration in original) (quoting 52 U.S.C. § 20703), that is a textbook example of a legal conclusion, unsupported by any factual allegation, and it cannot survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

337, 341 (1997)) (alteration in original); *see also Bostock v. Clayton County*, 590 U.S. 644, 655 (2020) (interpreting Title VII of the Civil Rights Act of 1964 by "orient[ing] ourselves to the time of the statute's adoption"); *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). As WEC has shown, and the Alliance Intervenors will not belabor, Congress enacted Title III to buttress protections of the constitutional right to vote in the Civil Rights Act of 1957; the statute had nothing to do with investigating the administrative voter registration-list requirements enacted in the NVRA and HAVA decades later. *See* WEC Br. at 23–27 (outlining history and purpose of Title III). Laws like HAVA and the NVRA are concerned with things like a "failure[] to purge voters who have moved away or have died," which, as one early court applying Title III noted, "do[] not bear any particular importance" to the Title III inquiry. *Bruce*, 298 F.2d at 863 n.2.

Here, DOJ's stated purpose "lack[s] any reference or relation to the purposes for which Title III was enacted," *Oregon*, 2026 WL 318402, at *10, and it is, if fact, antithetical to Title III's purpose, *see Weber*, 2026 WL 118807, at *8–10. The Court should reject DOJ's efforts to justify its demands with a purpose so disconnected from the statutory scheme purportedly authorizing it. *See In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039-MAK, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by

Congress"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236–39 (D. Mass. 2025) (similar).[3]

### 3. DOJ's stated purpose is contrived and mere pretext to its true aims.

Finally, context shows that "the basis and the purpose" that DOJ included in its demands to Wisconsin was not the true basis and purpose for its request. *See Weber*, 2026 WL 118807, at *10–12 (holding that the court is "not obliged to accept a contrived statement and purpose"). Neither DOJ's letter on June 17, 2025, requesting information from WEC regarding its compliance with HAVA, nor DOJ's brief December 2 email demanding Wisconsin's voter registration list, nor its subsequent Complaint identified any deficiencies with Wisconsin's list maintenance procedures.[4] *See generally* Compl.; *see also* Dkt. No. 3-1 at 2–3, 11. Further, DOJ has made carbon copy demands to at least forty states and has sued more than twenty based on nearly identical boilerplate claims and allegations. *See* WEC Br. at 8–9; *Weber*, 2026 WL 118807, at *4; *Oregon*, 2026 WL 318402, at *11. This nationwide effort directly undermines DOJ's purported "purpose" for investigating Wisconsin specifically. And although DOJ's actions are *not* consistent with the claim that it is investigating any one of the states whose data it has demanded specifically, they are entirely consistent with the purpose of amassing a nationwide voter registry. *See Weber*, 2026

---

[3] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. § 20703), those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the potential denial of voting rights on account of race. *See infra* Section II.B. Those prior cases are fundamentally different from the circumstances here, where DOJ has not even tried to assert that it seeks to investigate any possible denial of the constitutional right to vote.

[4] Although DOJ's June 4, 2025 letter alleges that "[WEC] has refused to provide any administrative complaint process or hearing regarding HAVA complaints against the Commission," Dkt. No. 3-1 at 35, the sufficiency of any state-based administrative complaint procedure is distinct from "list maintenance," Dkt. No. 3-1 at 11, and could not remedied with access to the statewide voter list.

WL 118807, at *10–12 ("It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database."); *see also Oregon*, 2026 WL 318402, at *11 (observing that DOJ's conduct "rais[es] suspicion" and "serious doubt as to the true purposes for which [it] is seeking voter registration lists in this and other cases, and what it intends to do with that data").

### B.    HAVA's design and Wisconsin's exemption from traditional list maintenance procedures render DOJ's demand improper as a matter of law.

As WEC demonstrates, Wisconsin's exemption from the NVRA (and consequently, its exemption from HAVA's list maintenance procedures), as well as HAVA's choice to leave methods of compliance with HAVA to the States, means that DOJ could not reasonably allege that Wisconsin is failing to comply with HAVA. *See* WEC Br. at 15–18, 21–22. Indeed, even the district courts overseeing DOJ's claims against California and Oregon—which *are* subject to the NVRA, and consequently to HAVA's list maintenance procedures—held that DOJ had not put forward any plausible violation of HAVA in light of HAVA's express design of leaving methods of compliance to the States. *See Weber*, 2026 WL 118807, at *14 (citing 52 U.S.C. § 21085 and observing that "Congress opted to defer much of the program to the decision of the states"); *Oregon*, 2026 WL 318402, at *3 (similar).

These two fundamental observations—that Wisconsin is exempt from HAVA's list maintenance procedures and that 52 U.S.C. § 21085 leaves to States the choice on how to comply with HAVA's requirements—means that DOJ could not plausibly state a violation of HAVA by Wisconsin to begin with. To reinforce the strength of that conclusion, however, the Alliance Intervenors address in detail the specific provisions of HAVA that DOJ cites in either its Complaint or Motion to Compel to show how none are plausibly violated here.

First, DOJ cites 52 U.S.C. § 21083(a)(2)(B)(iii) in its Motion to Compel for the proposition that list maintenance ought to be conducted in a manner that eliminates duplicate names (without, of course, specifying how Wisconsin failed to comply with this provision). *See* Dkt. No. 3 at 12. But DOJ fails to recognize this requirement applies to "list maintenance performed under subparagraph (A)," the section from which Wisconsin is *exempt* under Section 4(b) of the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(iii). That provision, for NVRA-exempt states like Wisconsin, requires only that the State "remove the names of ineligible voters from the computerized list in accordance with State law." *Id.* Thus, under HAVA, Wisconsin has no duty to comply with any substantive federal list-maintenance requirements—its only obligation is to act "in accordance with State law." *Id.* And the notion that the federal government could audit Wisconsin's compliance with its own laws would violate core federalism principles. *Cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (explaining federal courts cannot compel state officials to comply with state law); *O'Brien v. Mass. Bay Transp. Auth.*, 162 F.3d 40, 44 (1st Cir. 1998) ("It is not the proper purview of a federal court to supervise state officials' compliance with state law.").

Next, DOJ cites 52 U.S.C. § 21083(a)(4), which requires States to establish "[m]inimum standard[s] for accuracy of State voter registration records," Compl. ¶ 13 (alterations in original), again failing to allege how Wisconsin has not met these requirements. In reality, Wisconsin has met these requirements. The only duty that this subsection of HAVA imposes on Wisconsin is that its election system "shall include provisions [in its own state law] to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. § 21083(a)(4). DOJ can assess Wisconsin's compliance with this requirement by consulting Wisconsin state law itself, which shows Wisconsin has in fact established such provisions. *See, e.g.*, Wis. Stat. § 6.50(1)

(requiring WEC to identify voters who have not participated in an election for four or more consecutive years for potential suspension of status); Wis. Stat. § 6.50(3) (requiring municipal clerks to issue notices to voters they believe have moved of a pending change to their voter registration status); Wis. Stat. § 6.36(1)(ae) (requiring Wisconsin to be a member of the Electronic Registration Information Center ("ERIC") to share information on voters who have moved, become deceased, or have duplicate registrations); Wis. Stat. § 6.50(4) (requiring municipal clerk to deactivate registration of voter who is deceased); Wis. Stat. § 7.15(1) (requiring the review of duplicate voter records). These are just a sample; the Court can find a full list of statutory list maintenance procedures required by Wisconsin law in Exhibit 4 to DOJ's Motion to Compel. *See* Dkt. No. 3-1 at 13–18. These laws are themselves evidence that Wisconsin has complied with this provision of HAVA. *See, e.g.*, *Weber*, 2026 WL 118807, at *16 (holding California complied with this provision of HAVA because "California has standards for list maintenance and provided them to DOJ before the initiation of this litigation").

In its Complaint, DOJ also identifies 52 U.S.C. § 21083(a)(5)(A), the provision of HAVA that requires states to verify information provided by applicants. *See* Compl. ¶ 13. But as WEC correctly identifies, HAVA specifically notes that "[t]he State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, *in accordance with State law*." 52 U.S.C. § 21083(a)(5)(A)(iii) (emphasis added). For the same reasons that DOJ is not entitled to investigate whether Wisconsin conducts its own state list maintenance requirements in compliance with state law, nor is DOJ entitled to determine whether Wisconsin complies with this provision in accordance with state law.

Finally, DOJ's Complaint also points to 52 U.S.C. § 21083(a)(1)(A), which requires each State to compile and maintain "a single, uniform, official, centralized, interactive computerized

statewide voter registration list." *See* Compl. ¶ 12. As with the other provisions, DOJ fails to allege how Wisconsin has not complied with this provision. Wisconsin has complied; as DOJ's Complaint admits, WEC "offered the publicly available [Statewide Voter Registration List] to the Attorney General[]." Compl. ¶ 22. As a result, it must exist. And, because HAVA grants each State "[t]he specific choices on the methods of complying with [this section]," 52 U.S.C. § 21085, DOJ has no basis to allege Wisconsin's specific approach is inadequate, so long as it exists, which is clearly does.

### C. DOJ's failure to comply with the Privacy Act is an independent ground for dismissal.

WEC argues correctly that the federal Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, precludes granting DOJ's Motion to Compel. *See* WEC Br. at 41–42, 41 n.24. As the federal district court hearing California's motion to dismiss DOJ's Complaint recently concluded, however, DOJ's failure to comply with the Privacy Act is also cause to dismiss DOJ's Complaint. *See Weber*, 2026 WL 118807, at *17–18. Where it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal is appropriate. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quotation omitted). Such is the case here. If the Court disagrees, however, it should nonetheless consider Intervenors' Privacy Act arguments as a basis to deny Plaintiff's Motion to Compel.

The Privacy Act "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). In particular, the Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). Both of those terms have specific definitions. A "system of records" is defined as "a group

of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his *name, or the identifying number* . . . or other identifying particular assigned to the individual" (emphasis added)). Wisconsin's statewide voter registration list, which contains the names and other unique identifying information of all registered voters in Wisconsin, plainly qualifies as a "system of records" under the Privacy Act. *Cf.* Compl. at 9 (demanding statewide voter registration list including "each registrant's full name, date of birth, residential address, and either their state driver's license number, the last four digits of their Social Security number, or HAVA unique identifier"). And the term "maintain" under the Privacy Act is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Wisconsin's statewide voter registration list, DOJ must comply with the Privacy Act before doing so. *See id.* § 552a(e)(4); *see also Weber*, 2026 WL 118807, at *17 (holding that "[t]he Privacy Act applies to the voter records request by the DOJ"). And that is precisely the relief DOJ seeks here: an order from this Court to collect Wisconsin's statewide voter list. *See* Compl. at 9.

As DOJ attempts to amass state voter registration data onto its own servers, the Privacy Act imposes specific obligations. Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of

individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.* The Privacy Act further requires that DOJ adhere to strict notice-and-comment requirements, by first providing "adequate advance notice" to two congressional committees and the Office of Management and Budget to evaluate the effects on privacy and other rights, and only then publishing a SORN in the Federal Register that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See* 5 U.S.C. § 552a(e)(4), (e)(11), (r).

DOJ does not appear to dispute that the Privacy Act is applicable here. *See* Compl. ¶ 24 (alleging that DOJ attached a proposed memorandum of understanding to its December 2 email that "stated that the authorities by which this information was requested were the NVRA, HAVA, and the [Civil Rights Act], as well as the Privacy Act"). But in this case, unlike in some of its other parallel cases, DOJ fails to identify in its Complaint *any* authorizing SORN, let alone acknowledge that it must publish one that would apply to Wisconsin's statewide voter registration list.[5]

The Court can take judicial notice of the existing SORNs for the Department of Justice's Civil Rights Division, all of which required to be published with the Federal Register.[6] But the SORN that DOJ primarily relies upon in the parallel cases—which it identified as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records"—for its purported authority to collect States' voter registration lists, does not extend to a record such as a statewide

---

[5] *See, e.g.*, Compl. ¶ 23, *United States v. Toulouse Oliver*, No. 1:25-cv-01193-JCH-JFR (D.N.M. Dec. 2, 2025) (citing three SORNs, including 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003)); Compl. ¶ 23, *United States v. Amore*, No. 25-cv-00639-MSM-PAS (D.R.I. Dec. 2, 2025) (same).

[6] The Department of Justice maintains a comprehensive list of all existing SORNs by department. The SORNs for the Civil Rights Division can be found at: https://www.justice.gov/opcl/doj-systems-records#CRT [https://perma.cc/85R6-8586].

voter registration list. *See* 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). That SORN merely notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Id.* Applied here, this would implausibly mean *every* registered voter in Wisconsin (or, given DOJ's near-nationwide demands, every registered voter in the country) is a subject under investigation, victim, or witness in some unnamed case. Similarly, that SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government. As the district court in the parallel California case recently concluded: "This SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity—some identified to this Court and others not." *Weber*, 2026 WL 118807, at *18.[7]

To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in Wisconsin (and the country) would be to nullify that

---

[7] DOJ cites two other notices in the Federal Register in some of its other cases, *see supra* note 5, but those notices do not cover the scope of information requested here. One adds an additional "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904, 43904 (July 29, 2005); *see also Weber*, 2026 WL 118807, at *18 ("This SORN again does not sufficiently alleviate concerns regarding what private and sensitive information will be shared and when."). The other adds a blanket routine use to all DOJ SORNs that is relevant only in the event of a data breach of DOJ systems. *See* 82 Fed. Reg. 24147 (May 25, 2017); *see also Weber*, 2026 WL 118807, at *18 ("The third SORN is concerning disclosures after data breaches—also lacking relevance and specificity.").

statute's "procedural safeguards," which "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified).

In short, because no published SORN covers the system of records DOJ intends to maintain, the Privacy Act prohibits DOJ from collecting Wisconsin's statewide voter registration list, providing this Court yet another reason to dismiss.

### D.    The Court should dismiss the Complaint without leave to amend.

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss. And, just as the California and Oregon federal district courts have done, this Court should not grant leave to amend. *See Weber*, 2026 WL 118807, at *20; *Oregon*, 2026 WL 318402, at *12.

"District courts . . . 'have broad discretion to deny leave to amend where . . . the amendment would be futile.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). That is precisely the case here, where "no allegations of additional facts . . . could cure the deficiencies" in DOJ's Title III demand. *Oregon*, 2026 WL 318402, at *12; *see supra* Sections I.A–B. And "Defendants have already offered to provide Plaintiff with the information" requested subject to appropriate redactions required by Wisconsin law, which DOJ cannot show is preempted by Title III. *Oregon*, 2026 WL 318402, at *12; *see* WEC Br. at 33–40. Lastly, "[g]iven that the DOJ's request violates federal privacy laws, leave to amend would be futile" for that reason as well. *Weber*, 2026 WL 118807, at *20; *see supra* Section I.C.

## II.    The Court should deny Plaintiff's Motion to Compel.

As WEC correctly argues, DOJ's Motion to Compel is procedurally and substantively improper. *See* WEC Br. at 42–47. The Alliance Intervenors briefly supplement WEC's arguments

below, showing how WEC's arguments are supported by the conclusions of the parallel courts hearing DOJ's claims that it is entitled to private voter data from other states, and how *Lynd* does not provide an adequate basis for this Court to withhold scrutiny of DOJ's demand. The Alliance Intervenors also offer the Court a roadmap for the proper procedural course from here.

### A. As parallel courts have found, the Federal Rules of Civil Procedure govern DOJ's claim.

As WEC argues, the Federal Rules of Civil Procedure govern the civil procedure in all civil actions, including in proceedings to compel testimony or documents. *See* WEC Br. at 43 (citing Fed. R. Civ. P. 81(a)(5)). Although *Lynd* holds otherwise, *Lynd* is entirely irreconcilable with *United States v. Powell*, 379 U.S. 48 (1964), which the Supreme Court decided two years later. *See* WEC Br. at 43–44. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *See, e.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010))). Accordingly, this Court should follow the conclusions of the parallel courts and hold that the Federal Rules of Civil Procedure apply. *See Oregon*, 2026 WL 318402, at *8 (holding Federal Rules apply and noting, "[t]he Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*"); *Weber*, 2026 WL 118807, at *8 & n.15 (following *Powell* and denying motion to compel).

### B. The Court must conduct meaningful review of DOJ's Title III demand.

As WEC shows, DOJ's contention that this Court may not evaluate the factual support or sufficiency of DOJ's demand is wrong. *See* WEC Br. at 32–33; *see also Powell*, 379 U.S. at 57 (to invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be

relevant to the purpose"). In addition to the arguments and caselaw that WEC provides showing why that is the case, Intervenors show why *Lynd* is wholly distinguishable from the circumstances here—the primary case DOJ cites for the proposition that the Court cannot conduct an inquiry into DOJ's demand. *See* Dkt. No. 3 at 7–8.

       In arguing that this Court cannot evaluate the sufficiency of DOJ's demand, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "basis" under 52 U.S.C. § 20703, while eliminating racial discrimination in voting was the *explicit* "purpose" of Title III. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* WEC Br. at 23–26 (recounting history of the CRA). In fact, there was no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents were overwhelmingly excluded from the voter rolls. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected"). *Lynd* emphasized that if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would still need to adjudicate that issue. *Lynd*, 306 F.2d at 226. Moreover, *Lynd* emphasized that it was "of great importance" that the records

DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers." *Id.* at 231. Here, in contrast, WEC has offered to provide the public records—it is only private, confidential information that is at issue.

None of the factors that made *Lynd* an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand relates, not to the protection of constitutional voting rights, but merely administrative requirements imposed by another statute (HAVA) with its own enforcement mechanisms and corresponding limits. *See supra* Sections I.A.2, I.B. There is therefore at least a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. And, again, public statements by DOJ officials themselves strongly indicate that DOJ's real purpose may be to impede voting rights, or at least entirely unrelated to protecting the franchise. *See Weber*, 2026 WL 118807, at *10–12; *Oregon*, 2026 WL 318402, at *11 (observing that DOJ's recent and ongoing "conduct rais[es] suspicion . . . [and] casts serious doubt as to the true purposes for which [it] is seeking voter registration lists in this and other cases, and what it intends to do with that data").

Although *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi, it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary demands targeting quintessentially private information about all registered voters in the entire state of Wisconsin, and nearly every other State, too.

### C.    The proper procedural course is to resolve the Motion to Dismiss and then, if needed, to proceed to discovery.

The Court should resolve this case via the pending Motion to Dismiss, rather than through a "motion to compel production of records" that is not sanctioned by the Federal Rules or any other authority. *See supra* Section II.A; *see also Weber*, 2026 WL 118807, at *8 ("Title III cannot transform an election records request by the federal government from an ordinary civil action into

an action comparable to an order to show cause."). Resolving the Motion to Dismiss first is also consistent with judicial economy. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (observing that motions to dismiss under Rule 12 serve as "one important mechanism for weeding out meritless claims").

If this Court nonetheless addresses the Motion to Compel and treats it as a summary judgment motion, as WEC argues, it should first permit Defendants and Intervenors an opportunity to conduct discovery on the merits of DOJ's claim. Granting DOJ the final relief it seeks before Defendants and Intervenors have the opportunity to conduct discovery relevant DOJ's claim would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("[I]t is plain that in some circumstances an immediate ruling on a summary judgment motion will cross the line from the permissible to the impermissible. . . . Summary judgment . . . should not be granted until the party opposing the motion has had an adequate opportunity for discovery." (discussing *Dean v. Barber*, 951 F.2d 1210, 1213–14 (11th Cir. 1992))); *Ill. State Emps. Union, Council 34 v. Lewis*, 473 F.2d 561, 565 (7th Cir. 1972) ("It is, of course, well settled that a district court may not resolve issues of fact on a motion for summary judgment. Nor should such a judgment be entered until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.").

## CONCLUSION

Intervenors respectfully request the Court dismiss the Complaint with prejudice and deny the Motion to Compel as moot. If the Court does not grant the Motion to Dismiss, it should still deny the Motion to Compel as procedurally improper. And if the Court evaluates the Motion to Compel on the merits and treats it as a summary judgment motion, the Court should grant Defendants and Intervenors the opportunity to conduct discovery on DOJ's claim.

Dated: February 12, 2026

*Respectfully submitted,*

*/s/ David R. Fox*

Diane M. Welsh
(Wisconsin State Bar No. 1030940)
Christa O. Westerberg
(Wisconsin State Bar No. 1040530)
**PINES BACH LLP**
122 West Washington Ave., Suite 900
Madison, WI 53703
T: (608) 251-0101
F: (608) 251-2883
dwelsh@pinesbach.com
cwesterberg@pinesbach.com

David R. Fox
Christina Ford
Omeed Alerasool
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
cford@elias.law
oalerasool@elias.law

*Counsel for Intervenor-Defendants*
*Wisconsin Alliance for Retired Americans and Forward Latino*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ David R. Fox*
David R. Fox