IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br> v. <br><br> WISCONSIN ELECTIONS <br> COMMISSION, et al., <br><br><br> *Defendants.* | 3:25-cv-1036-jdp |

**SUPPLEMENTAL SUBMISSION OF INTERVENOR-DEFENDANTS
COMMON CAUSE, MELISSA ADAMS,
AMANDA MAKULEC, AND JAIME RIEFER**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.    Plaintiff Is Not Entitled to Summary Proceedings. ............................................... 2

II.   Plaintiff's Request Is Legally Deficient Because It Offers an Inadequate and Pretextual Statement of Its Basis and Purpose.................................................................... 4

III.  Plaintiff's Request Is Further Deficient Because Plaintiff Is Not Entitled to Unredacted Records. ............................................................................................................... 11

CONCLUSION.......................................................................................................................... 13

## INTRODUCTION

In arguing against dismissal, the United States does not identify any proper "basis" or "purpose" for its request—let alone "the basis" and "the purpose," which is what Title III of the Civil Rights Act of 1960 ("CRA" or "Title III") requires it to disclose. 52 U.S.C. § 20703. In the end, Plaintiff's only argument is that the CRA, a statute designed to protect the rights of voters, requires the Wisconsin Elections Commission ("WEC") to summarily turn over to the United States Department of Justice ("USDOJ") the sensitive personal data of the individual Common Cause Intervenors and all other Wisconsin voters, without any procedural protections, assessment of the United States' basis and purpose, or judicial review. That position contravenes the CRA's statutory text, congressional purpose, binding Supreme Court precedent, the Federal Rules of Civil Procedure, and common sense.

The United States casts this Court's role as nothing more than a rubber stamp, claiming Title III of the CRA entitles it to whatever it wants, whenever it wants, no matter how thin the justification it gins up. This is not the law, particularly here, where USDOJ seeks to pervert the CRA to weaponize voters' data against them on the basis of a facially deficient pleading and a pretextual rationale. This Court should dismiss for the reasons stated in WEC's initial and reply briefs, as well as those in the Common Cause Intervenors' supplemental submissions.[1]

---

[1] As with the Common Cause Intervenors' initial supplemental brief, Dkt. 63, this supplemental submission is mindful of and abides by the Court's admonition to present "only additional arguments not raised by the Wisconsin Elections Commission without re-hashing arguments already made," Dkt. 53.

1

## ARGUMENT

### I.    Plaintiff Is Not Entitled to Summary Proceedings.

The United States' main argument for why its Complaint survives dismissal is that core procedural protections under the Federal Rules of Civil Procedure, including motions under Rule 12, are categorically unavailable in Title III proceedings. Dkt. 71 at 7–12. The CRA says nothing of the sort, and binding precedent and the Federal Rules are to the contrary. Common Cause Intervenors present argument on this issue not raised in WEC's reply brief, Dkt. 75 at 14–16.

Start with the text of the Federal Rules of Civil Procedure. Title III provides that when the Attorney General makes a demand for voting-related records or papers, the federal district court where such demand is made "shall have jurisdiction ***by appropriate process*** to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This "appropriate process" is set forth in the Federal Rules of Civil Procedure, which "govern the procedure in ***all*** civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1 (emphasis added), subject to a narrow set of express exceptions which does not include Title III requests, Fed. R. Civ. P. 81. *See Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 861 n.15 (7th Cir. 2002) (noting "the familiar canon of statutory construction *expressio unius est exclusio alterius*, which provides that 'to express or include the one thing implies the exclusion of the other . . .'" (quoting Black's Law Dictionary 602 (7th ed. 1999))).

The Supreme Court's binding decision in *United States v. Powell*, 379 U.S. 48 (1964)—decided ***after*** the non-binding case on which Plaintiff principally relies, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)—further requires the same conclusion.

Plaintiff attempts to cabin *Powell*'s holding to its specific circumstances, claiming that the analysis in *Powell* does not apply here because the Internal Revenue Code[2] "prohibited the Government from subjecting a taxpayer 'to unnecessary examination or investigations.'" Dkt. 71 at 10 (quoting 26 U.S.C. § 7605(b)). Yet in *Powell*, the Supreme Court held that "the Federal Rules of Civil Procedure apply" ***not*** because of this "unnecessary examination or investigations" language in 26 U.S.C. § 7605(b), but "[b]ecause [§] ***7604(a)*** contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18 (emphasis added). This exact language in Section 7604(a) that *Powell* deemed dispositive also appears in the CRA: "the United States district court . . . shall have jurisdiction by appropriate process." 52 U.S.C. § 20705. In other words, the Supreme Court held in *Powell* that statutory language identical to the CRA compels applying the Federal Rules of Civil Procedure.

To the extent *Powell* leaves any ambiguity—which it does not—the Supreme Court further confirmed this interpretation in subsequent cases. *See Donaldson v. United States*, 400 U.S. 517, 528 (1971) ("The Civil Rules, of course, do have an application to a summons proceeding." (citing Fed. R. Civ. P. 81)), *superseded by statute on unrelated grounds as recognized by Polselli v. IRS*, 598 U.S. 432 (2023); *see also Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (Rehnquist, J., in

---

[2] It is unclear whether Plaintiff argues that *Powell* is distinguishable as applying only to IRS subpoenas, as opposed to other administrative subpoenas. Regardless, any such argument is foreclosed by Seventh Circuit precedent, which has applied the *Powell* framework to cases involving administrative subpoenas issued by agencies other than the IRS. *See, e.g.*, *Commodity Futures Trading Comm'n v. Tokheim*, 153 F.3d 474, 477–78 (7th Cir. 1998) (applying *Powell* framework to administrative subpoena issued by the Commodity Futures Trading Commission).

3

chambers) (same). The language quoted in both *Donaldson* and *Becker*—from what was then Federal Rule of Civil Procedure 81(a)(3)—is materially identical to the language in current Federal Rule of Civil Procedure 81(a)(5), which governs this case today: "These rules apply to proceedings to compel . . . the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). Plaintiff provides no explanation for how it squares its approach with these precedents and the Federal Rules themselves.

Finally, the United States affirmatively chose to commence this action by filing a Complaint. *See* Dkt. 1. The United States invoked the Federal Rules to initiate this litigation and to defend its pleadings elsewhere; it cannot now disclaim those choices because the results proved unfavorable. *See United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *8 n.1 (D. Or. Feb. 5, 2026) ("Even if *Lynd* applied here, the Court doubts its applicability here where Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation. By contrast, *Lynd* appears to contemplate an application directly to the court for the records." (citing 306 F.2d at 225)).

## II. Plaintiff's Request Is Legally Deficient Because It Offers an Inadequate and Pretextual Statement of Its Basis and Purpose.

Because the Federal Rules apply in full force, the Complaint must plead facts sufficient to survive a motion to dismiss. It fails to do so because it does not plausibly allege that the Attorney General set forth in writing "the basis and the purpose" supporting her unprecedented demand for sensitive voter information. 52 U.S.C.

4

§ 20703. Plaintiff barely contests any of this, devoting one short paragraph to identifying the basis and purpose that it purportedly included in its pre-litigation correspondence with Wisconsin, Dkt. 71 at 17, and instead insisting that this Court cannot "question or examine" the United States' compliance with these statutory requirements, *id.* at 19. Yet as noted *supra*, the Federal Rules themselves and binding Supreme Court precedent foreclose this latter argument and subject the United States' request to normal judicial scrutiny under Rule 12.

As to the former argument, the United States asserts in a conclusory manner that "the basis for the demand was Title III of the CRA and the purpose was ensuring compliance with minimum standards and routine voter registration list maintenance." *Id.* at 17 (internal quotation marks omitted). Both are patently insufficient. The basis for a Title III request is a statement as to why the United States believes there is some relevant violation of law. *See Lynd*, 306 F.2d at 229 n.6; *accord United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026) ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."). Title III cannot itself provide the basis: if USDOJ could cite Title III as a basis for its request under Title III, it would by definition always satisfy the statute's requirements. This tautology would functionally erase the express requirement from the statutory text.

As to the purpose, USDOJ must show how the requested records would help it in "investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402,

at \*10; *accord Lynd*, 306 F.2d at 229 n.6. But Plaintiff provides no explanation for why the full and unredacted Wisconsin voter file is necessary to investigate the state's compliance with federal voting statutes. For one, the state voter file shows a single snapshot in time, so it cannot shed light on whether a state has procedures in place that constitute "reasonable effort" to remove ineligible voters under the National Voter Registration Act of 1993 ("NVRA"). 52 U.S.C. § 20507(a)(4)(A)–(B). For another, the United States has never alleged any evidence of anomalies or anything inconsistent with reasonable list maintenance efforts that Wisconsin has conducted. In other words, the United States casts no doubt on Wisconsin's compliance with the Help America Vote Act ("HAVA")—a statute that explicitly leaves mechanisms for conducting list maintenance within the discretion of the States. *See* 52 U.S.C. §§ 21083(a)(2)(A), 21085. Further, the United States provides no explanation as to why it needs an unredacted version of the state registration list, replete with voters' private information, to investigate Wisconsin's list maintenance programs. Plaintiff falls well short of satisfying the CRA's basis-and-purpose requirements.

*Amici* halfheartedly try to fill this gap, suggesting that USDOJ's interest in preventing voter fraud might constitute a purpose for the request. *See* Dkt. 67-1 at 8–11; Dkt. 73-1 at 9–14. Yet USDOJ does not identify any evidence of voter fraud or improper voting in Wisconsin, nor any connection between any hypothesized fraud and the claimed need for the unredacted voter file. The CRA's basis-and-purpose requirements would be meaningless if they could be circumvented by simply uttering the phrase "election integrity." In support of their argument, *amici* cite cases that—

6

in contexts having nothing to do with public disclosure provisions or the CRA—note *states*' general interest in protecting against voter fraud. *See* Dkt. 67-1 at 8–11; Dkt. 73-1 at 9–14 (citing, among other cases, *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) and *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181 (2008)). But cases like *Brnovich* and *Crawford* involve the Supreme Court validating individual states' authority over their election processes by upholding those states' application of their own election laws. Here, Plaintiff and *amici* demand just the opposite: an unprecedented federal incursion into Wisconsin's administration of its own election processes.

Further, Plaintiff has done nothing to rebut the inevitable conclusion that the demand is pretextual. In their initial supplemental brief, the Common Cause Intervenors laid out a massive body of judicially noticeable evidence documenting that USDOJ's stated basis and purpose are pretextual. *See* Dkt. 63 at 3–13. Remarkably, the United States does not specifically contest *any* of the evidence that Common Cause Intervenors included in their initial supplemental brief. Instead, it claims that only "third-party hearsay" supports the idea that there is anything untoward about its request. *See* Dkt. 71 at 30.

In fact, it is not hearsay, but United States's own actions and statements, that undercut its representations. *Cf.* Fed. R. Evid. 801(d)(2). It is a matter of public record that USDOJ has sued 29 states and the District of Columbia to force the production of complete and unredacted voter registration lists. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter*

*Information*, Brennan Ctr. for Just. (updated Feb. 27, 2026), https://perma.cc/8YMZ-AD97 (collecting court filings); *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."). It is USDOJ that admitted in a recent court filing to sharing state voter-roll information with election-denier advocacy groups for purposes of identifying (non-existent) voter fraud. *See* Dkt. 63 at 7–8. It is USDOJ that is actively soliciting states to sign a memorandum of understanding ("MOU") that violates the very federal voting statute USDOJ is purporting to protect. *See id.* at 10–11; *see also* Dkt. 63-1. It was ***the Attorney General herself*** who wrote the Minnesota Governor tying "Operation Metro Surge," which involves well-documented abuses by United States Immigration and Customs Enforcement against the civilian population in the state with, among other things, Minnesota's refusal to turn over its unredacted voter file. *See* Dkt. 63 at 8–9. And most recently, it was the President of the United States who announced his desire to "nationalize" elections in certain states. *See id.* at 9. None of this is hearsay, and the United States does not have an answer for any of it. The Attorney General's letter and the President's comments are exactly the kind of "significant mismatch" between stated and actual reasons that the Supreme Court has held courts may not accept. *Dep't of Commerce v. New York*, 588 U.S. 752, 755 (2019) (rejecting agency's "contrived" justification and refusing to "exhibit a naivete from which ordinary citizens are free").

Even now, the United States' carefully worded statement in its brief does not disclaim that USDOJ might aggregate state voter files at some point other than "[w]hen the Civil Rights Division performs [an] individualized assessment," or that an agency like Department of Homeland Security ("DHS") or an entity like the Department of Government Efficiency ("DOGE") might do so. Dkt. 71 at 30 & n.17. Notably, earlier this month, USDOJ represented in federal court—in a hearing related to one of its materially identical cases seeking Minnesota's unredacted voter file— that it did "not know the answer" to whether the Attorney General could use state voter files to "look at every person who has voted in the country." Ex. 1, Hrg. Tr. 49–50, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Mar. 3, 2026).

*Amici* quote out-of-circuit case law to suggest this Court bury its head in the sand and ignore the uncontested record in this case because government actors can in certain circumstances be afforded a presumption of regularity. *See* Dkt. 73-1 at 14–15. Yet "[t]he presumption of regularity is an analytic tool, not an excuse to rubberstamp any and all executive action as lawful absent clear evidence to the contrary." *Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021). To date, three federal courts have issued decisions regarding USDOJ's materially identical demands for states' unredacted voter files. One court expressly held that "[t]he presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 2026 WL 318402, at *11. Another did not expressly address the presumption of regularity but held that USDOJ's justification was "contrived,"

9

"pretextual," and "untethered to the reality of what the government has said outside of the courtroom," and found that "[US]DOJ obfuscate[ed] its true motives in the present matter." *Weber*, 2026 WL 118807, at *10, *12. This Court should not accept *amici*'s invitation to let USDOJ skirt its obligations under federal law by hiding behind the presumption of regularity.[3]

---

[3] Federal courts around the country have consistently refused to permit the presumption of regularity to cloud their clear vision of executive action taken on a pretextual or wholly fabricated basis. *See, e.g.*, *Oregon v. Trump*, 802 F. Supp. 3d 1277, 1292 (D. Or. 2025), *appeal dismissed*, No. 25-6268, 2026 WL 443722 (9th Cir. Feb. 17, 2026) (noting "[t]he President's determination was simply untethered to the facts" and that "his determination was not conceived in good faith" (internal quotation marks omitted)); *Newsom v. Trump*, 158 F.4th 984, 998, 1003 (9th Cir. 2025) (collecting cases, rejecting extreme deference to presidential discretion, and noting Trump Administration's statements "that do[] not square with reality"); *Illinois v. Trump*, No. 25-CV-12174, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025) (conducting "a credibility assessment" and determining that the declarations submitted by the Trump Administration were not "reliable"); Ex. 2, *Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX at 11 (D. Md. Jul. 14, 2025) (continued evidentiary hearing) (remarking to USDOJ that "the reality is, this has been a process, from day one, [in which] you have taken the presumption of regularity and you've destroyed it"); Ex. 3, *Singh v. Tsoukaris*, No. 26-cv-01531, Dkt. 10 at 2 (D. NJ. Feb. 20, 2025) ("the presumption of regularity and integrity previously and routinely afforded to the Executive branch and the United States Attorney's Office has been undeniably eroded in this jurisdiction and across the country, and this Court will no longer blindly accept statements of fact from Respondents unless they are made under oath by an individual with personal knowledge"); *President and Fellows of Harvard College v. United States Department of Homeland Security*, 788 F. Supp. 3d 182, 205 (D. Mass. June 23, 2025) ("[T]he Court will not apply any presumption of regularity to conduct that is so unusual and therefore irregular on its face."); *New York v. Trump*, 767 F. Supp. 3d 44 (S.D.N.Y. 2025), *opinion modified on other grounds on denial of reconsideration*, 778 F. Supp. 3d 578 (S.D.N.Y. 2025), and *modified on other grounds*, 784 F. Supp. 3d 619 (S.D.N.Y. 2025) (expressing serious doubt as to the credibility of the administration's representation of urgency underlying its granting access to DOGE to Treasury databases).

### III.   Plaintiff's Request Is Further Deficient Because Plaintiff Is Not Entitled to Unredacted Records.

Defendant argues that Plaintiff has forfeited its argument that the CRA preempts Wisconsin law that plainly prohibits the disclosure of the voter data that USDOJ demands. *See* Dkt. 75 at 14. To the extent this Court disagrees that USDOJ has waived this argument, the Common Cause Intervenors make clear that the CRA in no way preempts this Wisconsin law.

While Congress has authority to legislate in the elections context, these enactments and their pre-emptive effect extend only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). "The [Supreme] Court has observed repeatedly that pre-emption is ordinarily not to be implied absent an actual conflict." *English v. General Elec. Co.*, 496 U.S. 72, 90 (1990) (internal quotation marks omitted). "In order to show conflict preemption, a plaintiff must show either that it would be impossible to comply with both state and federal law or that state law constitutes an obstacle to satisfying the purposes and objectives of Congress." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) (internal quotation marks and formatting omitted).

Plaintiff insists that it is entitled to Wisconsin's unredacted voter file—despite existing state-law protections against the disclosure of that data, *see* Dkt. 58 at 33–36—because the CRA itself purportedly "explicitly requires the nondisclosure of records produced to the Attorney General under the Act," Dkt. 71 at 25–26. To support this argument, Plaintiff points only to the fact that the CRA includes the phrase "all records" in its disclosure provision. *Id.* at 26 (citing 52 U.S.C. § 20701).

11

But far from being "explicit," the CRA is silent as to whether the records at issue may be redacted. This presents no actual conflict.

Plaintiff's argument is particularly meritless because, as the Common Cause Intervenors noted in their initial supplemental brief, *see* Dkt. 63 at 16–17, courts have routinely found that redactions are permissible—and indeed sometimes constitutionally *required*—under the NVRA's public disclosure provision, which uses the same "all records" language, *see* 52 U.S.C. § 20507(i)(1). Plaintiff does not acknowledge, much less contest, either the similarities between the NVRA and CRA disclosure provisions or the cases consistently interpreting the NVRA's provision to permit redaction. It would be incongruous and irrational to permit redaction under the NVRA's public disclosure requirement but prohibit it under the CRA's counterpart, especially given that both use the same language.

If anything, it is *Plaintiff's* mistaken interpretation of the CRA—that it somehow compels Wisconsin to turn over unredacted sensitive personal information of every voter in the state—that conflicts with multiple federal laws. Plaintiff's interpretation of the CRA engineers a conflict with the NVRA. Plaintiff's interpretation of the CRA conflicts with the Privacy Act, which protects voters' personal information related to core First Amendment activities like political participation. *See* Dkt. 63 at 13–15. And as Common Cause Intervenors argued in their initial supplemental brief, *see id.* at 15–17, Plaintiff's interpretation of the CRA likely conflicts with the constitutional right to vote, as at least one federal court of appeals has held that redaction under the NVRA's materially identical public

12

disclosure provision is affirmatively required to the extent disclosure of sensitive material would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).

## CONCLUSION

The United States' Motion to Compel should be denied and the Complaint dismissed with prejudice.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Douglas M. Poland*

Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Douglas M. Poland, SBN 1055189
Scott B. Thompson, SBN 1098161
Law Forward, Inc.
222 W. Washington Ave., Ste. 680
Madison, WI 53703
dpoland@lawforward.org
sthompson@lawforward.org
608.283.9822

Ryan V. Cox, SBN 1140899
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
Fax: 414-272-0182
rcox@aclu-wi.org

*Attorneys for Intervenor-Defendants Common Cause, Melissa Adams, Amanda Makulec, and Jaime Riefer*