# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WISCONSIN ELECTIONS COMMISSION, *et al.*,<br><br>Defendants,<br><br>WISCONSIN ALLIANCE FOR RETIRED AMERICANS, FORWARD LATINO,<br><br>Intervenor-Defendants,<br><br>COMMON CAUSE, *et al.*,<br><br>Intervenor-Defendants. | Civil Action No. 3:25-cv-01036-JDP |

**SECOND SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANTS
WISCONSIN ALLIANCE FOR RETIRED AMERICANS AND FORWARD LATINO
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................ 1

    I.     The Federal Rules of Civil Procedure apply to this case. ............................................ 1

    II.    DOJ did not state a sufficient basis and purpose in its Title III demand. .................... 3

        A.  DOJ's Title III demand lacked any factual basis whatsoever. ............................... 3

        B.  DOJ did not provide a legally sufficient purpose for its demand. ......................... 7

    III.   DOJ's failure to comply with the Privacy Act is an independent ground for dismissal................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.R. Union v. Phila. City Comm'rs*,
872 F.3d 175 (3d Cir. 2017) ...................................................................................... 10

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ................................................................................. 10

*Coalition for Open Democracy v. Scanlan*,
No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025) ........................... 12

*Colon-Marrero v. Velez*,
813 F.3d 1 (1st Cir. 2016) .......................................................................................... 6

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) ........................................................................ 4, 7

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ................................................................................ 1, 3, 4

*Parungao v. Cmty. Health Sys., Inc.*,
858 F.3d 452 (7th Cir. 2017) .................................................................................... 11

*United States v. Benson*,
No. 1:25- CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) .............................. 1, 2, 3

*United States v. Hernandez*,
79 F.3d 584 (7th Cir. 1996) ....................................................................................... 4

*United States v. Oregon*,
No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ...................................... passim

*United States v. Powell*,
379 U.S. 48 (1964) ................................................................................................. 1, 2

*United States v. Weber*,
No. 2:25- CV-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................................. 1, 3, 9

**Statutes**

26 U.S.C. § 7604(a) .............................................................................................2

26 U.S.C. § 7605(b) .............................................................................................2

52 U.S.C. § 20507 ............................................................................................ 10

52 U.S.C. § 20703 .............................................................................................4

52 U.S.C. § 20705 .............................................................................................2

52 U.S.C. § 21083(a)(2)(B)(iii) ...........................................................................5

Wis. Stat. § 5.061(1) ..........................................................................................5

Wis. Stat. § 6.36(1) ......................................................................................... 12

**Regulations**

82 Fed. Reg. 24147-01 (May 25, 2017) .............................................................. 11

**Other Authorities**

*Basis*, *Black's Law Dictionary* (4th ed. 1968) ....................................................6

*Hr'g on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 134 (Mar. 29, 1960)........2

**INTRODUCTION**

Within the past six months, the U.S. Department of Justice ("DOJ") has filed dozens of lawsuits like this one. Every federal court to reach a decision in these cases has dismissed them. *See United States v. Weber*, No. 2:25-CV-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb 27, 2026). This Court should do the same.

WEC's Reply Brief addresses the majority of arguments by DOJ and amici; the Alliance Intervenors submit this supplemental reply brief only to the extent they have additional arguments to offer. In particular, the Alliance Intervenors show how (1) the Federal Rules of Civil Procedure govern this case, *see United States v. Powell*, 379 U.S. 48, 58 n.18 (1964); (2) DOJ failed to offer an adequate basis and purpose for the demand under the facts presented here; and (3) the Privacy Act is a proper ground for dismissal.

**ARGUMENT**

I.     **The Federal Rules of Civil Procedure apply to this case.**

DOJ's lead argument—that a motion to dismiss is procedurally improper in a Title III proceeding—is foreclosed by Supreme Court precedent and has been recently rejected by two federal courts. *See Weber*, 2026 WL 118807, at *8 (holding that DOJ's parallel lawsuit in California was governed by Federal Rules before evaluating and granting motions to dismiss); *Oregon*, 2026 WL 318402, at *8 ("[T]he Court applies the Federal Rules of Civil Procedure as in any other case."). In advancing its argument, DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit civil-rights-era cases from the early 1960s which predate *Powell*. *See* Dkt No. 71 ("DOJ Opp.") at 7–9. But as both *Weber* and *Oregon* recently

held, those cases are irreconcilable with the Supreme Court's subsequent decision in *Powell*. *See* Dkt. No. 65 ("Alliance First Suppl. Br.") at 16.

In arguing otherwise, DOJ points to its third loss on these issues, in Michigan. *See Benson*, 2026 WL 362789, at *2. But the federal court in *Benson*, too, granted Rule 12(b)(6) motions—so the court could not have held such motions improper. *See id.* at *2, 11. DOJ also protests that *Powell* involved a different statute and that "Congress has indicated that the Federal Rules of Civil Procedure are inapplicable" to the Civil Rights Act ("CRA"). DOJ Opp. at 8. But the CRA contains no such indication—it simply requires "appropriate process." 52 U.S.C. § 20705. *Powell* involved a statute with that same phrase—"appropriate process," 26 U.S.C. § 7604(a)—and held that because the statute "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. The same must be true for the CRA's identical text. [1]

DOJ attempts to further distinguish *Powell* by positing that the full statutory scheme at issue in *Powell* stated that "[n]o taxpayer shall be subjected to unnecessary examination or investigations," 26 U.S.C. § 7605(b), but the Supreme Court did not rely on section 7605(b) to justify its application of the Federal Rules. Instead, as *Powell* explained, where government has invoked the court's process to compel compliance, a court may examine the request to ensure its own process is not being abused by enforcing a request issued for an improper purpose. *See* 379 U.S. at 58 & n.18. Moreover, in addition to an examination of the government's underlying purpose for the request, *Powell* authorized the reviewing court to determine whether the "steps

---

[1] Indeed, contrary to an indication that the Federal Rules should not apply to Title III, as DOJ argues, legislative history indicates that the Federal Rules do apply. *See Hr'g on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 134 (Mar. 29, 1960) (statement of Lawrence Walsh, Deputy Attorney General of the United States) ("[T]his act . . . incorporates the rules of federal procedure except to the extent they are expressly negatived by express provision of the act.").

2

required by the Code [to obtain enforcement of the summons] have been followed"—here, whether DOJ actually stated a sufficient basis and purpose for the records in its demand. For all of these reasons, this Court is entitled to examine the underlying sufficiency of DOJ's demand under Title III before permitting DOJ to use the Court's authority to enforce that demand.

## II.    DOJ did not state a sufficient basis and purpose in its Title III demand.

Even though DOJ disputes whether the Federal Rules apply to this action, DOJ concedes that its demand is lawful only if it included a valid basis and purpose as required by Title III. *See* DOJ Opp. at 17. Even *Lynd* agreed that a court must decide "whether the written demand has been made" according to "§ [20703]." 306 F.2d at 226. Courts have done so in all recent challenges to DOJ's parallel demands of other states. *See Weber*, 2026 WL 118807, at *8–10; *Oregon*, 2026 WL 318402, at *7–10. And that includes *Benson*: even *Benson*'s conception of a "limited" role for courts in reviewing CRA demands ended with the dismissal of DOJ's complaint as unlawful. 2026 WL 362789, at *9.

Without duplicating the arguments of WEC on these issues, the Alliance Intervenors offer the following brief supplement on why the basis and purpose in DOJ's written demand on Wisconsin was inadequate under the CRA.

### A.    DOJ's Title III demand lacked any factual basis whatsoever.

The Alliance Intervenors agree with WEC that DOJ's December 2, 2025 written demand on WEC to produce Wisconsin's full, unredacted statewide voter registration list did not contain any basis for the demand at all. *See* Dkt. No. 75 ("WEC Reply Br.") at 13–14. The Court can confirm this itself by consulting the written demand at issue: A terse, short email demanding an unredacted voter registration list that states only: "This request is for the *purpose* of ensuring compliance with minimum standards and routine voter registration list maintenance." Dkt. No. 3-1 at 11 (emphasis added).

Although DOJ contends "the basis for the demand was Title III of the CRA," DOJ Opp. at 17, the CRA is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *See, e.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (defining "basis" to include the "groundwork," "support," or "foundation" of something); *Oregon,* 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."). The CRA cannot be the "basis" for a CRA demand, or else the requirement to provide the "basis" would be superfluous. *See United States v. Hernandez*, 79 F.3d 584, 596 (7th Cir. 1996) ("[W]e recognize the time-honored rule that we are to avoid, if possible, a construction of a statute that renders any term surplusage."). Even the civil-rights-era cases that DOJ relies on show that DOJ has historically understood this requirement to address the factual basis for its investigation. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 ("This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.") (emphasis added); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar).

Perhaps anticipating that the CRA itself is not a valid basis for the request, DOJ also argues, in a footnote, that DOJ "had received several complaints regarding WEC's compliance with HAVA, and was investigating whether WEC was complying with Section 303 of HAVA." DOJ Opp. at 18 n.10 (citing Dkt. No. 5-1 at 2–3). Notably, DOJ does not actually argue this alleged factual basis was in the written demand itself, as required by the CRA. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)). [2]

---

[2] Because the basis for the records must appear in the demand itself, it is irrelevant to the legal issues before the Court whether Wisconsin officials have "willfully neglected their responsibilities

4

Additionally, the only complaint regarding WEC's compliance with HAVA that DOJ has actually identified appears in a June 4, 2025 letter from Assistant Attorney General Harmeet Dhillon regarding Wisconsin's supposed refusal to "establish a state-based administrative complaint procedure to enable voters to file a complaint regarding a HAVA violation they may observe or experience while voting," which DOJ alleges is a violation of Section 402 of HAVA. *See* Dkt. No. 5-5 at 1. That alleged violation has nothing to do with HAVA's *list maintenance* procedures, and an unredacted statewide voting list would not give DOJ any information about whether Wisconsin is complying with the provision of HAVA that requires it to establish an administrative complaint process.[3]

In any event, as the Alliance Intervenors showed in their first supplemental brief, in light of HAVA's design and Wisconsin's exemption from traditional list maintenance procedures, there is no "list maintenance" provision of HAVA that Wisconsin could ostensibly be violating. *See* Alliance First Suppl. Br. at 8–11. The Alliance Intervenors specifically identified the four provisions of HAVA that DOJ had vaguely identified or alluded to in its Complaint or Motion to Compel—including 52 U.S.C. § 21083(a)(2)(B)(iii) (regarding list maintenance obligations and duplicate entries), *id.* § 21083(a)(4) (regarding establishing minimum standards), *id.* § 21083(a)(5)(A) (regarding verifying information provided by applicants); and *id.* § 21083(a)(1)(A) (regarding the creation of a voter registration list)—and showed how Wisconsin

---

to properly administer elections according to the law," as Amicus Republican Party of Wisconsin broadly contends. Dkt. No. 67-1 ("RPW Amicus") at 15. Those complaints simply cannot supply a valid basis for DOJ's demand, even if amici were correct about the substance of their complaints (which they are not).

[3] Although it is beside the point, Wisconsin *has* established a process to hear such administrative complaints. *See* Wis. Stat. § 5.061(1) ("Whenever any person believes that a violation of Title III of P.L. 107-252 has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the commission.").

was either exempt from the provision or how it was already evident, from the text of existing Wisconsin law, that Wisconsin complies with the provision. *See* Alliance First Suppl. Br. at 8–11.

DOJ does not address these arguments *at all* except to argue broadly in a footnote that "[f]ederal courts have rejected WEC's argument that NVRA-exempt states like Wisconsin are 'exempt from HAVA's specific list maintenance provisions.'" DOJ Opp. at 4 n.3. (citing Dkt. No. 58 at 18, 21–22). But as WEC correctly shows, DOJ identifies only one case, and that single case does not actually stand for the principle that Wisconsin is subject to HAVA's list maintenance procedures. *See* WEC Reply Br. at 3–4 (discussing *Colon-Marrero v. Velez*, 813 F.3d 1, 13 (1st Cir. 2016)). The Republican Party of Wisconsin, too, broadly contends that Wisconsin is subject to HAVA, arguing that HAVA mandates "all states 'shall perform list maintenance . . . on a regular basis' and 'shall remove the names of ineligible voters.'" RPW Amicus at 11 (citing 52 U.S.C. § 21083(a)(2)). But here, the Republican Party of Wisconsin all but reads out subsection (iii) of that part of the statute, which explains that NVRA-states like Wisconsin need only "remove the names of ineligible voters from the computerized list *in accordance with State law*." 52 U.S.C. § 21083(a)(2)(A)(iii) (emphasis added). Notably, although the Republican Party of Wisconsin argues that Wisconsin's state removal procedures are insufficient and impractical, it does not actually argue that Wisconsin election officials have failed to follow existing removal procedures. *See* RPW Amicus at 19 (arguing it is "wildly unrealistic" that Wisconsin's statutory challenge procedures will effectively result in the removal of noncitizens). In any event, as the Alliance Intervenors argued in their first brief (and no party addressed), federal courts may not generally supervise a state's compliance with its own state law. *See* Alliance First Suppl. Br. at 9.

For all of these reasons—because DOJ identified no basis for the request in its written demand, because the only factual basis DOJ identified (outside of its written demand) bears no

plausible relationship to the records it seeks, and because Wisconsin has no HAVA list maintenance obligations that it has even arguably violated in the first place—DOJ failed to state a valid basis for the demand, and DOJ's complaint should be dismissed for that reason alone.

**B.      DOJ did not provide a legally sufficient purpose for its demand.**

As WEC has already addressed, and the Alliance Intervenors will not generally retread, the government's desire to evaluate a state's HAVA compliance is not a valid purpose under the CRA. *See* WEC Reply Br. at 5–9. The Alliance Intervenors thus advance only narrow arguments here regarding the legality of the demand's purpose that were not fully addressed by WEC.

Much of DOJ's argument rests on the language from *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), that a valid demand can be made "for the purpose of investigating possible violations of a Federal statute." DOJ Opp. at 7, 13–14 (quoting *Coleman*, 313 F.2d at 868). But DOJ entirely ignores the context behind that statement. Just as in *Lynd*, the court in *Coleman* was considering alleged denials of the right to vote in Mississippi by white registrars who refused to register Black citizens. *See In re Coleman*, 208 F. Supp. at 199. Such a refusal to register Black citizens would have violated a variety of federal laws at the time, including but not limited to the First Enforcement Act, *see* 16 Stat. 140 (1870), which prohibited discrimination in voter registration on the basis of race. The fact that the Fifth Circuit affirmed the Attorney General's demand as a proper inquiry—and in so doing affirmed his ability to "investigat[e] possible violations of a Federal statute," 313 F.2d at 868—in no way gives the Attorney General blanket authorization here to investigate the violation of any possible statute.

And although DOJ contends that the United States previously "pursued successful matters" to obtain voter lists under the CRA for the purpose of investigating NVRA or HAVA compliance, DOJ Opp. at 24, the examples it cites did not actually test the legality of whether that was in fact a lawful purpose under the CRA. In the first matter DOJ cites, Georgia entered a consent decree

7

with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," Dkt. Nos. 72-2, 72-3, and in the second, Texas chose to enter a Memorandum of Understanding with DOJ, again without any litigation, *see* Dkt. No. 72-4. In neither of the instances was the applicability of the CRA contested or resolved by a court.

Finally, although amicus Center for Election Confidence argues that DOJ is entitled to the presumption of good faith in assessing DOJ's purpose, *see* Dkt. No. 73-1 ("CEC Amicus") at 14–16, there is good reason to believe that DOJ's real purpose is pretextual—that is, that it is not to assess Wisconsin's compliance with HAVA, but instead to amass a national voter database and purge voters from the rolls. This case was not started as investigation into Wisconsin-specific practices; it is one small part of a nationwide campaign to obtain unredacted statewide voter lists from every state. Indeed, as of today, it is now one of 30 nearly identical cases. *See* Alliance Mem. in Supp. of Intervention, Dkt. No. 11 at 5–7 & n.4.[4]

That DOJ's inquiry is not merely about HAVA compliance is obvious from the proposed Memorandum of Understanding ("MOU") that DOJ asked Wisconsin (and other states) to sign in conjunction with turning over their state's voter list, which does not require the state to implement procedures to follow HAVA or the NVRA. The MOU instead requires Wisconsin to remove from the rolls any voters DOJ demands be removed within 45 days. *See* Dkt. No. 72-1 at 5. Consistent with the MOU, Assistant Attorney General Dhillon—counsel in this and nearly every other parallel

---

[4] In addition to the cases the Alliance Intervenors identified at the time of suit, DOJ has now sued eight additional states. *See* Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-cv-00042 (E.D. Va. Jan. 16, 2026); Compl., *United States v. Adams*, No. 3:26-cv-00019 (E.D. Ky. Feb. 26, 2026); Compl., *United States v. Caldwell*, No. 3:26-cv-2025 (D.N.J. Feb. 26, 2026); Compl., *United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla. Feb. 26, 2026); Compl., *United States v. Henderson*, No. 2:26-cv-00166 (D. Utah Feb. 26, 2026); Compl., *United States v. Warner*, No. 2:26-cv-00156 (S.D. W. Va. Feb. 26, 2026).

case—has admitted in an interview regarding these lawsuits that: "You're going to see hundreds of thousands of people in some states being removed from the voter rolls."[5]

The prospect that DOJ is not being candid about its true purpose is not just speculation from Intervenors and WEC; both the California and the Oregon courts concluded that DOJ's asserted purpose is contrived and pretextual. As the California court explained, "[r]epresentations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10; *see also id.* at *11 ("DOJ's relationship with DHS further confirms that voting roll data is being used to compile a national database with millions of voters' private information."). As the court in Oregon noted, "since the decision in *Weber* was issued, [DOJ] has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists." *Oregon*, 2026 WL 318402, at *11. Of particular concern to that court was the fact that the Attorney General sent a letter to the Governor of Minnesota complaining about immigration enforcement in the state and demanding, among other things, access to unredacted voter rolls. As the court explained, "[t]he context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Id.* And indeed, in its most recent filings in its ongoing appeals in the parallel cases, DOJ has repeatedly raised "the specter of noncitizen" voting in the 2026 elections as a reason to expedite the appeals. Emergency Mot. to Expedite at 16, *Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), Dkt. No. 6-1; *accord* Mot. to Expedite at 15, *Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), Dkt.

---

[5] AAG Harmeet Dhillon, (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795.

No. 12.1; *see also* Reply in Supp. of Mot. to Expedite at 3–4, *Benson*, No. 26-1225 (6th Cir. Mar. 10, 2026), Dkt. No. 19 (DOJ arguing that noncitizens may be removed from voter rolls without being subject to NVRA protections). Notably, however, DOJ did not raise the issue of noncitizen voting in those cases before the district court (nor has it done so here).[6]

DOJ's newfound insistence that it needs to expeditiously obtain unredacted voter rolls to identify and remove noncitizens is further evidence that this case, and all of the other parallel cases, are not actually about enforcement of HAVA or the NVRA, as DOJ claims. Although it is ultimately immaterial to the resolution of this case because Wisconsin is exempt from both the NVRA's and HAVA's list maintenance provisions, *see* Alliance First Suppl. Br. at 8–11; *supra* at 5–6, even if Wisconsin were subject to both, those statutes do not address removal of noncitizens from the rolls. HAVA's list maintenance provisions, *see* 52 U.S.C. § 21083(a)(2)(A), require non-exempt states to remove individuals in accordance with 52 U.S.C. § 20507, the NVRA's removal provisions. But as the plain text of the NVRA shows and courts have found, NVRA's removal provisions do not specifically require the removal of noncitizens; the NVRA instead "requires a reasonable effort to remove *only* those voters *who become ineligible because of death or change of address*." *Bellitto v. Snipes*, 935 F.3d 1192, 1195 (11th Cir. 2019) (emphases added) (citing 52 U.S.C. § 20507(a)(4)); *see also Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away.").

---

[6] Both amici supporting DOJ's position also raise the specter of noncitizen voting and the corresponding vote dilution that would purportedly follow if noncitizens actually voted. *See* RPW Amicus at 9–11; CEC Amicus at 10–14. Neither connects this concern with the asserted purpose of DOJ's Title III demand: "ensuring compliance with minimum standards and routine voter registration list maintenance," Compl. ¶ 23, or in other words, identifying deficiencies with Wisconsin's list maintenance *procedures*. *See also supra* Section II.A.

Under these circumstances, "[t]he presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 2026 WL 318402, at *11.

**III.    DOJ's failure to comply with the Privacy Act is an independent ground for dismissal.**

DOJ's claim should also be dismissed because DOJ has not complied with the Privacy Act. *See* Alliance First Suppl. Br. at 11–15. DOJ insists that it is not required to plead compliance with the Privacy Act. *See* DOJ Opp. at 29. But that is beside the point. "[W]hen it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quotation omitted). Such is the case here.

As DOJ does not contest, the Privacy Act applies to the data records that DOJ seeks, and it was required to publish a System of Records Notice ("SORN") that would apply to Wisconsin's statewide voter list before it could collect that information. *See* DOJ Opp. at 29–30. But DOJ does not identify which SORN would apply to Wisconsin's unredacted statewide voter list. Instead, DOJ cites to a table of every active SORN ever issued by DOJ as of 2017 and invites the Court to assume that one must apply. *See id.* at 29 (citing 82 Fed. Reg. 24147-01 (May 25, 2017)). The table lists approximately 150 systems of records, such as the "Antitrust Division Expert Witness File," "Annuity Brokers List System," "Clandestine Laboratory Seizure System," "Employee Health Records," and the "National DNA Index System." *See* 82 Fed. Reg. 24147-01. That DOJ makes no effort to explain how any of those SORNs could be read to encompass Wisconsin's statewide voter registration list proves the point. Nor does DOJ attempt to address why the specific SORNs *that DOJ itself previously invoked*, and the *Weber* court rejected as applying to state voter lists, apply to the present collection. *See* Alliance First Suppl. Br. at 13–15. Because the Privacy Act imposes specific procedural safeguards that DOJ has not and cannot show it fulfilled here, the

11

Privacy Act prohibits DOJ from obtaining—and then collecting, maintaining, and using—Wisconsin's statewide voter registration list and thus from prevailing on its claim.

Finally, although it does not change whether DOJ has compiled with the Privacy Act, there is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights." DOJ Opp. at 27–28. To the contrary, in the case DOJ cites, *Coalition for Open Democracy v. Scanlan*, No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025), the court excluded social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SETSM (D.N.H. June 18, 2025), Dkt. Nos. 87, 87-1.[7]

Nor is it relevant whether Wisconsin shares such data with the Electronic Registration Information Center ("ERIC"). *See* DOJ Opp. at 27; RPW Amicus at 15–16. Wisconsin's sharing of such information is explicitly authorized by Wisconsin statute, and its participation is subject to strict security protocols and limited purposes agreed to by participating states. *See* Wis. Stat. § 6.36(1)(ae). The fact that DOJ has offered Wisconsin a MOU to allegedly protect the data—a memorandum which, as noted, also requires Wisconsin to remove from the rolls any voters DOJ demands within 45 days, *see* Dkt. No. 72-1 at 5—does nothing to actually ensure that DOJ is

---

[7] DOJ has been informed about these restrictions in several other cases, including in briefs filed months before DOJ filed its brief here, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 3, 2025), Dkt. No. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), Dkt. No. 22, but DOJ persists in repeating this false claim.

actually complying with the Privacy Act, nor does it change the fact that nothing in Wisconsin law (or federal law) compels Wisconsin to share this data for this purpose.

## CONCLUSION

Intervenors respectfully request the Court dismiss the Complaint with prejudice and deny the Motion to Compel as moot.

Dated: March 20, 2026

*Respectfully submitted,*

*/s/ David R. Fox*

Diane M. Welsh
(Wisconsin State Bar No. 1030940)
Christa O. Westerberg
(Wisconsin State Bar No. 1040530)
**PINES BACH LLP**
122 West Washington Ave., Suite 900
Madison, WI 53703
T: (608) 251-0101
F: (608) 251-2883
dwelsh@pinesbach.com
cwesterberg@pinesbach.com

David R. Fox
Christina Ford
Omeed Alerasool
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
cford@elias.law
oalerasool@elias.law

*Counsel for Intervenor-Defendants*
*Wisconsin Alliance for Retired Americans and Forward Latino*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

_/s/ David R. Fox_
David R. Fox