IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

WISCONSIN ELECTIONS COMMISSION, MEAGAN
WOLFE, ANN S. JACOBS, MARK L. THOMSEN,
CARRIE RIEPL, DON M. MILLIS, ROBERT F.
SPINDELL, JR., and MARGE BOSTELMANN,

Defendants,

and

COMMON CAUSE, MELISSA ADAMS,
AMANDA MAKULEC, JAIME RIEFER, WISCONSIN
ALLIANCE FOR RETIRED AMERICANS, and
FORWARD LATINO,

Intervenor-Defendants,

OPINION and ORDER

25-cv-1036-jdp

---

This case is one of more than two dozen lawsuits that the United States has filed in states across the country seeking production of a state voter registration list. The Attorney General demanded that Wisconsin election officials produce the state's unredacted voter registration list. When the election officials refused, citing state privacy laws, the government filed this lawsuit against the Wisconsin Elections Commission and each of its members to compel production of the voter list under Title III of the Civil Rights Act of 1960. Two groups of voters and voter advocacy organizations have intervened as defendants. *See* Dkt. 53.

Two competing sets of motions are before the court. The government moves to compel production of the voter registration list, Dkt. 2. Defendants and one set of intervenors move to dismiss the complaint, Dkt. 56 and Dkt. 62, joined by the other intervenors. Dkt. 65. The court has also received amicus briefs from advocacy groups in support of both sides. Dkt. 59; Dkt. 61; Dkt. 67; Dkt. 73.

The court will grant the motions to dismiss and deny the motion to compel. Like the courts in *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) and *United States v. Fontes*, No. cv-26-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), the court concludes that a voter registration list is not a record that can be demanded under Title III. Accordingly, the government's demand for Wisconsin's voter list fails as a matter of law.[1]

BACKGROUND

States have authority under the United States Constitution to prescribe the "time, place, and manner" for federal elections, subject to any regulations imposed by Congress. U.S. Const. Art. I, § 4, cl. 1. Congress has exercised its authority to regulate elections on several occasions. As relevant here, the Help America Vote Act (HAVA) requires each state to implement a "single, uniform, official, centralized, interactive, computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1), and to maintain that list regularly by adding newly eligible voters and removing ineligible voters. *Id.* § 21083(a)(2)(A)(iii); (a)(2)(B). Consistent with principles of state control over elections, HAVA provides only a minimum set of requirements for voter registration lists; for instance, it requires that each voter's name and registration information be included in the list and that each voter be assigned a unique identifier. 52 U.S.C. § 21083(a)(1)(A)(ii)–(iii). State election officials retain discretion under

---

[1] Four other district courts have also rejected the government's request for voter lists under Title III, although they did so on different grounds. *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026)*; United States v. Galvin*, No. cv 25-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026). No court has granted the government's request.

HAVA to determine the appropriate method for creating, storing, and maintaining their state's voter registration list. *Id.* §§ 21085 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State.").

In June 2025, the United States Department of Justice sent a letter to the administrator of the Wisconsin Elections Commission, asserting that it had "received several complaints" regarding the commission's compliance with HAVA and requesting a copy of Wisconsin's current voter registration list as well as information about Wisconsin's list maintenance procedures. Dkt. 5-1. In response, the commission referred the government to an online portal where it could download a redacted copy of the voter list, and it answered the government's questions about its list maintenance procedures. Dkt. 5-2.

In December 2025, the government renewed its request for Wisconsin's voter registration list, this time specifying that it wanted the unredacted version containing either the voter's driver's license number or the last four digits of the voter's social security number. Dkt. 5-3 and Dkt. 72-1. The commission refused to share the unredacted list, citing state privacy laws. Dkt. 5-4. The government responded with this lawsuit, asserting that it was entitled to the unredacted list under Title III of the Civil Rights Act of 1960. Dkt. 1.

The government's request for Wisconsin's unredacted voter registration list is not unique. Thus far, the government has requested voter registration lists from 48 states and Washington, D.C., and it has initiated lawsuits to compel production against 30 states and Washington D.C.[2]

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (May 11, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (last visited May 13, 2026).

ANALYSIS

Title III of the Civil Rights Act of 1960 is one of a series of federal laws enacted in the mid-twentieth century to enforce the Fifteenth Amendment against state efforts to suppress black citizens' right to vote. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Title III provides a tool for the federal government to obtain records from state election officials to investigate alleged discriminatory practices. *Id.* at 853–54. Title III requires state election officials to "retain and preserve" for 22 months following any election "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. It also requires state election officials to produce those records for inspection and copying "upon demand in writing by the Attorney General." *Id.* § 20703. The Attorney General must provide "a statement of the basis and the purpose" for the demand. *Id.*

Here, the government asserts in its complaint that it is entitled to Wisconsin's unredacted voter registration list under Title III. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that the government's Title III claim fails as a matter of law. A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) (internal quotations omitted).

The government disputes whether Rule 12(b)(6) applies in this case, asserting instead that Title III actions are subject to a summary proceeding akin to an order to show cause.

Dkt. 71, at 12–17 (citing *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)). But the court's analysis of the dispositive issue would be the same either way, so the court need not resolve this dispute. *See Lynd*, 306 F.2d at 226 (noting that even in a summary proceeding, the court must decide as a matter of law whether the records can be properly demanded under Title III).

Defendants and their amici contend that the government's position fails for multiple reasons, specifically: (1) a voter registration list is not a record subject to production under Title III; (2) the government has not provided an adequate statement of basis and purpose, as required by the statute; (3) the government has not explained why it needs an unredacted copy of the voter list, as opposed to the publicly available redacted version; and (4) the government's request is barred by state and federal privacy laws. The court agrees that a voter registration list is not a record subject to production under Title III, so it will dismiss the complaint on that ground without considering defendants' other arguments.

Title III requires state election officials to retain and preserve "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a given election. 52 U.S.C. § 20701. The government can demand production of a document only if it is subject to retention and preservation under § 20701. *Id.* § 20703. Whether § 20701 applies to a voter registration list is a question of statutory interpretation. In interpreting a statute, the court begins with the statutory text, with "the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (internal quotations omitted). The words of the statute must be read in context, "with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). Whenever possible, the statute should be construed "so that effect is given to all its provisions,

so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn,* 542 U.S. 88, 101 (2004)).

Two district courts have recently adopted the view that a voter registration list is not a record subject to retention and preservation under § 20701. *Benson,* 2026 WL 362789; *Fontes,* 2026 WL 1177244. *Benson* construed § 20701 to mean that election officials must retain only records received from prospective voters or other outside sources, not records created by the state itself. *Id.* at *9. The *Benson* court gave three reasons why the statutory text supported that interpretation. First, the statute requires an election official to retain only records that "come into his possession." That phrase is most naturally read as a synonym of "receive" or "acquire," which are not words generally used to describe documents one creates. *Id.* Second, part of the phrase "come into his possession" would be superfluous if § 20701 included internally created documents, because then Congress could just as easily have said, "in his possession." *Id.* Third, § 20701 provides examples of records subject to the retention and preservation requirement, namely, voter applications, registrations, and records of poll tax payments, all of which are records that election officials receive from prospective voters. *Id.*

The *Benson* court also found the government's interpretation of § 20701 inconsistent with the broader statutory context of Title III. It observed that § 20701 requires states to preserve all documents subject to disclosure under the statute, reasoning that "nothing in the CRA's text implies an intent to require states to preserve every election-related record that they *create.*" *Id.* at *10. The court in *Fontes* expanded on this analysis, observing that it makes little sense to require a state to "retain" or "preserve" a voter registration list, which is a living document that state election officials regularly update by adding newly eligible voters and removing ineligible ones. 2026 WL 1177244, at *4.

The *Fontes* court also concluded that the government's interpretation would introduce conflict between Title III and other federal election statutes, including HAVA and the National Voter Registration Act (NVRA). 2026 WL 1177244, at *4–*5. Section 20702 of Title III provides that any election official who "steals, destroys, conceals, mutilates, or alters" a record subject to preservation under § 20701 may be fined or imprisoned for up to one year. But HAVA and the NVRA require election officials to "alter" the state voter registration list by regularly updating it. *Id.* In the *Fontes* court's view, the government's reading of Title III creates a nonsensical scenario in which state election officials could be fined or imprisoned for doing something that federal law requires them to do. *Id.*

This court agrees with *Benson* and *Fontes* that § 20701 does not encompass records created by state election officials, including voter registration lists. The government's arguments to the contrary are not persuasive. First, the government says that Congress used the phrase "come into his possession" to focus on the time that an election official gains possession of the records, not to exclude records created by the state. Dkt. 71, at 27. But that argument doesn't square with the plain language of the statute. Title III has a temporal requirement: election officials are required to retain election records "for a period of twenty-two months from the date of any general, special, or primary election." 52 U.S.C. § 20701. But the time limit runs from the date of the election, not the date that the records came into election officers' possession. *See Gallion*, 187 F. Supp. at 855 ("Regardless of when these records came into the possession of the election official, under Section 301 they must be retained and preserved for a period of twenty-two months"). It's not clear what time restriction "come into his possession" might impose under the government's interpretation of Title III, and the government doesn't explain.

Second, the government argues that *Benson* and *Fontes* relied on a meaningless distinction that would "effectively carve out vast numbers of federal election records, which was plainly not the intention of Congress" in passing Title III. The government says that most voter registration applications today are completed electronically and only preserved in voter registration lists, so excluding those lists would hollow out Title III for no discernible reason.

As an initial matter, the government provides no factual support for its assertion that electronic voter registration applications are not preserved outside the state voter registration list. As defendants point out, that assertion is not supported by Wisconsin law, which requires Wisconsin election officials to retain original copies of both paper and electronic voter registration forms. Wis. Stat §§ 6.30(5), 6.35(3). Nor does the court agree that the distinction drawn in *Benson* and *Fontes* is meaningless. As the *Benson* court observed, Congress had reason to focus the scope of Title III on records submitted by voters, because it was attempting to prevent states from engaging in the then-routine practice of destroying rejected voter registration applications to conceal discriminatory practices. 2026 WL 362789, at *9 (citing *Report of the United States Commission on Civil Rights* 93 (1959), https://perma.cc/2PDF-GZHB). Further, voter registration lists are not necessarily simple compilations of voter registration applications. Some contain additional information that Congress may very well have wanted to exempt from production: for example, the court in *Benson* noted that Michigan's voting list contains information about individuals' voting histories.[3] *Id.* at *10.

---

[3] Neither side explains whether Wisconsin's voter registration list contains information other than what voters submit on their voter registration applications. But even if it does not, the fact that some state voter lists contain that type of information helps explain why Congress may have exempted these records.

Third, the government challenges the *Fontes* court's conclusion that § 20702's prohibition on "alter[ing]" records is inconsistent with the list maintenance requirements in HAVA and the NVRA. The government argues that when read in context of the other words in § 20702 (steal, destroy, conceal, mutilate), the statute plainly prohibits only alterations intended to make a document unavailable, inaccessible, or inaccurate for evidentiary purposes, not regular document maintenance. The government's reading of § 20702 is a fair one, but it doesn't call into question the holding of *Fontes*. Even if § 20702 could conceivably be reconciled with the government's interpretation of Title III, there is still tension in a statutory construction that applies Title III's requirements to non-permanent records like voter registration lists. In addition to the prohibition on "alter[ing]," state election officials must "retain" and "preserve" documents subject to production under Title III. 52 U.S.C. § 20701. The government has provided no explanation of what it means to "retain" or "preserve" a document like a voter registration list that is updated on a near-constant basis.

In sum, this court joins *Benson* and *Fontes* in concluding that voter registration lists are not documents subject to production under Title III. That makes it unnecessary to decide whether the government has complied with the other statutory requirements to demand records. The government's motion to compel, Dkt. 2, will be denied, and the motions to dismiss filed by defendants and intervenor-defendant Common Cause, Dkt. 52 and Dkt. 56, will be granted.

The Seventh Circuit has cautioned against dismissing a complaint without leave to amend, but the court may do so if any amendment would be futile. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). The court has concluded that Title III does not even apply to the government's request for Wisconsin's voter registration list, so there

is no way that it could amend its complaint to state a claim for relief. The government's

complaint will be dismissed with prejudice and without leave to amend.


ORDER

IT IS ORDERED that:

1.  Plaintiff the United States of America's motion to compel, Dkt. 2, is DENIED.

2.  Defendants and intervenor-defendant Common Cause's motions to dismiss, Dkt. 56 and Dkt. 62, are GRANTED.

3.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered May 21, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge